# North and West Branch Railway Company *versus* Swank.

1. A grant of the right of way for a railroad includes all that the company may lawfully and adversely take for use as a way; therefore an agreement by a land owner to sell "the right of way" over his premises for a fixed sum covers all damages of whatsoever nature suffered by the land owner, unless the right to recover extra compensation is expressly reserved.

2. Where, by its terms, another writing is made a part of a written contract, the two writings will be construed together as if they had been incorporated in one.

3. Previous negotiations of the parties to a contract are presumed to be merged in the written instrument. If through mistake, fraud, etc., the contract as executed does not embody the intention of the parties, it will be reformed in equity, or, in this state, in a common law action, according to the rules of evidence in equity proceedings. The parol testimony of one of the parties to the written contract, if denied by the other, must be corroborated by another witness (or evidence equivalent thereto) before a court of equity will attempt to reform it or set it aside; or before a judge, sitting as a chancellor, should submit it to a jury in a proceeding at law.

March 6, 1884.　Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.　PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Columbia county:* Of January Term, 1884, No. 79.

This case arose upon the petition of Jacob Swank for the appointment of viewers to assess the damages for land taken by the North and West Branch Railway Company in the con-

| 105 | 555 |
| 132 | 544 |
| 105 | 555 |
| 143 | 385 |
| 105 | 555 |
| 156 | 440 |
| 105 | 555 |
| 157 | 196 |
| 105 | 555 |
| 186 | 554 |
| 105 | 555 |
| d222 | ¹499 |

struction of their road. The railroad company having appealed from the assessment of damages made by the viewers so appointed, an issue was formed, and on the trial thereof before ELWELL, P. J., the facts appeared as follows:

The North and West Branch Railroad Company was incorporated by Act of 13th May, 1871 (P. L., 814), for the construction of a railroad from Wilkesbarre, by way of Bloomsburg to Williamsport, with branching powers, and subject to the general railroad Act of 1849 and its supplements. On August 14, 1880, the president of the railroad company entered into a written agreement with the plaintiff, Jacob Swank, for the right of way over his farm in Catawissa township, Columbia county, as follows:

" I agree that the N. & W. Branch R. R. Co. shall have the right of way through my land, and if the parties cannot agree as to the amount of damage, it shall be referred to E. M. Tewksbury, and his decision shall be binding upon both parties. I furthermore agree to the terms offered to the N. & W. B. R. R. Co. by Solomon Shuman, in the presence of Caspar Rhawn, this 14th August, 1880.

Witness:—C. RHAWN.          JACOB SWANK."

The agreement with Solomon Shuman, a neighboring landowner below Swank, referred to in the above agreement, was as follows:

"I agree with the N. & W. B. R. R. Co. to sell them the right of way along the river bank for two hundred dollars per acre for tillable land, and release the river bank; or for two hundred and fifty dollars per acre, if they go back from the river.

Catawissa, Pa., 14th August, 1880.

Witness: C. RHAWN.          SOLOMON SHUMAN."

In December, 1880, the plaintiff demanded security for his damages, whereupon the railroad company, on 15th December, 1880, filed a damage bond in said court of common pleas.

In July, 1881, the franchises, corporate rights and property of the North and West Branch *Railroad* Company were sold by the sheriff upon process issuing out of the Court of Common Pleas of Columbia county, and by due process of law became vested in the North and West Branch *Railway* Company, which was duly organized and established as the successor of the former company, and proceeded with the construction of the road.

In May, 1882, the plaintiff instituted legal proceedings for assessment of damages, whereupon the railway company insisted upon the enforcement of the agreement of August 14, 1880, as fixing the rule and mode of assessing damages. The award of viewers, finding for the plaintiff in the sum of

$2,650, was made up without regard to this agreement, and an appeal to the common pleas was accordingly taken by the railway company.

Swank, the plaintiff, testified that on the day before the above mentioned contract was entered into he had a conversation with the president of the road as to the terms proposed. He said : " Mr. Waller, president of the road, was at my premises in 1880 (and previously) to talk about right of way, before the road had entered on my land, and before I signed any paper. He was there the day I met him at Catawissa— no, the day before. He just asked to put up a large culvert where that run is ; make it convenient for our cattle to pass backwards and forwards. So he went on to the cider house, and says he, ' We just want the width of this cider house ; set this over, and we will put our track right down here where this cider house stands.' We went on down two or three rods. Says he, ' Even if the ties extends out two or three rods here, we will cinder over there.' I just asked if he would keep inside of the wagon ruts. He says, ' Yes ; further than that we don't want to come in.' When we got to the watch-house says he, ' These engineers oftentimes are very apt to strike a straight course through such a place as this is ; they take too much land ; " and I didn't say anything agin it ; thought it was away from the plants and fruit. And he said they wouldn't disturb anything. He asked me what I was willing to give him the right of way for on the bank. He says, ' Well, we will give at the rate of $200 an acre right here on the bank.' I didn't say anything agin that, if he would put it where he showed me. ' Down here below that pale fence I paid a little over $300 an acre,' says I. Says he, ' We will make it $350 that part,' on account it left the river bank. Says I, ' I wouldn't like to have this road taken up I have round my barnyard and the premises.' ' No,' says he, ' that shan't be touched ; you shall have that road as you have it now, and even the fruit shall not be touched ; they must keep away from the fruit.' He spoke about the opening below the garden—' that shall not be touched ; you shall have your opening there.' I said I would come down and see about signing this paper, and see my son what he says about it. They called me in before I got to my son's. I can't read writing except my own name ; couldn't say whether agreement was read to me or not ; if it was, didn't understand it anyhow ; did not know what it meant."

This testimony of Swank was not corroborated by any other witness, and Waller, the president of the railway company, testified that they then arranged to meet and consummate their agreement, and that on the next day they did meet at

the shop of Caspar Rhawn in Catawissa, when the contract in question was executed by Mr. Swank and witnessed by Rhawn.

The plaintiff requested the court to charge, inter alia, as follows:

4. That the construction of the contract of August 14, 1880, is for the court and not for the jury; and the damages therein stipulated for will include the general damages to Mr. Swank's property from the location of the railroad, as well as mere compensation for the land taken.

Answer.—As stated in this point, the construction of the contract of August 14, 1880, is for the court. The general rule is, as I have already said, that an agreement with the company for the location of its road on the land of an owner, is presumed to include a license to do what is lawful in the construction and management of its road, to the same extent and to the same effect as if the land had been compulsorily taken, and it is therefore considered to release a claim for injury to other lands of the grantor (or for other damage) to which he would have been entitled if the land had been taken by legal proceedings under the statute. But in this case the parties contemplated compensation for other damages than the mere taking of the land for the right of way, and therefore the general rule, above stated, is not applicable here, and damages above the value of the land taken may be assessed if any such have been sustained. (Second assignment of error.)

5. That said contract of August 14, 1880, consists of two distinct parts, the second of which, relating to the rate of compensation for right of way, would remain in force and constitute the rule or rate of assessment, even if the railway company should not insist upon the execution of the first part of said contract, relating to the manner of ascertaining the amount to be paid.

Answer.—If the contract was a binding contract upon Swank, not induced by any misrepresentation as to what the company would or would not do, then the value of the land actually taken for the road must be ascertained by the terms of the contract, and the plaintiff is entitled to at least that value. If damages have been sustained by the plaintiff beyond that value, they should be ascertained all together as stated in our answer to the eighth point of the defendants, and the eighth point is this: That, in the absence of an agreement, the measure of damages to an owner for the location of a railroad through his land, is the difference of the value of the property as a whole before the opening of the road and the value as affected by the road. (Third assignment of error.)

6. That, if the jury believe that Swank was induced by D. J. Waller, president of the railroad company, to sign the

agreement to locate the track on other land than that on which it is located, or to build an arch under said track at the old passageway of Swank to the river, which arch was not so built by the company in laying said track, then the agreement as to amount for land taken is not binding on Swank.

Answer.—This is correct, provided the jury find that the conversation and negotiations in respect to the right of way, and leading to the agreement, were to the effect that an archway would be made by the company, giving the plaintiff access to the river, and that his fruit trees would not be disturbed by the location of the road; and that these representations, and the arrangement in respect thereto, continued up to the time of executing the writing. While parol evidence is inadmissible to alter a contract, it is competent for the purpose of showing that it would be a fraud upon the maker to take his land without the performance of the conditions on which he agreed to part with it. Where there is a written contract, the evidence should be clear, in order to set it aside by reason of representations or misrepresentations. (Ninth assignment of error.)

The court further charged as follows: " I have already said that as the case stands, the question of damages that would have been submitted to E. M. Tewksbury is here to be disposed of by you; and doing that you may consider the estimate that was put upon the land actually taken by the parties, if the contract was binding upon them as to that; if you go beyond that, you will be satisfied upon the question of the difference in value between the land before and since the railroad was on it." (Eighth assignment of error.)

Verdict for the plaintiff for $1,887, with interest, and judgment thereon. Whereupon the North and West Branch Railway Co. took this writ, assigning for error, inter alia, the answers to the above points and the above portion of the general charge of the court.

*Charles R. Buckalew*, (with whom were *Henry W. Palmer* and *L. E. Waller*), for the plaintiff in error.—The terms of the Shuman contract are expressly imported into the Swank contract, and are made to constitute a part of it as fully and completely as if they had been recited therein word for word; and those terms for the whole right of way—for a sale of the whole right of way—are the following: (1.) If the road shall be located along the river bank, the company to pay for the right of way at the rate of $200 per acre for tillable land occupied, and to have the whole bank of the river; and (2.) If the road shall be located away from the river bank—further inland—the company to pay for the right of way at the rate

[North and West Branch Railway Co. *v.* Swank.]

of $250 per acre for all land occupied, without reference to its tillable character, and, of course, with no concession to it of right to the river bank.

Any prior negotiations of the parties were merged in the written contract, and there is no testimony of any misrepresentation when this was executed : Pierce on Railroads, 133 ; Western Railway *v.* Babcock, 6 Metcalf, 346 ; (1 Redfield Am. Railway Cases, *212 ;) Conwell *v.* Springfield and Northwestern R. R., 81 Ill., 232.

*W. H. Rhawn,* (with whom were *E. R. Ikeler* and *J. B. Robins*), for defendant in error.—The provision in the contract to refer any dispute as to the "amount of damages" to a referee, shows that the damages contemplated were those for which compensation is provided by the statute : 2 Parsons on Contracts, (6 Ed.,) p. 499 ; Clark *v.* Pinney, 6 Cowen, 297 ; Harrington *v.* Kloprogge, 4 Doug., 5 ; Hitchings *v.* Van Brunt, 38 N. Y., 338. The rule for the construction of a written instrument is to give effect to all its language : Oswald *v.* Kopp, 2 Casey, 516 ; Williamson *v.* McClure, 1 Wr., 402 ; Miller *v.* Fitchthorn, 7 Casey, 252. The evidence of a parol understanding between the parties as to what property should be taken was sufficient to go to the jury.

Mr. Justice TRUNKEY delivered the opinion of the court, March 31, 1884.

By the contract Swank agreed that the Railway Company should have the right of way through his land, and if the parties could not agree as to the amount of damage, it should be referred to E. M. Tewksbury ; and furthermore agreed to sell the right of way along the river bank for two hundred dollars per acre for tillable land, and release the river bank ; or for two hundred and fifty dollars per acre if they go back from the river.

No part of this contract is rendered immaterial or insensible by giving the other parts their legal and ordinary interpretation. The sale of the right of way is absolute, with the privilege on the part of the purchaser to choose one of two locations. If the way along the river bank be taken the price shall be less per acre, exclusive of untillable land, and the bank be released ; if the one back from the river, a higher price per acre for all the land. In case of dispute respecting the land whether tillable or untillable on the river bank, or whether the land occupied is on the bank or back from the river, or about any other matter, causing a disagreement as to the amount of damage, the decision of Tewksbury shall be binding upon both parties. It is manifest that a real difference could

arise involving more than a measurement of land. The road might be so located that one party would claim it was on the bank and the other that it was back, each in good faith. So, difference might arise whether land taken is untillable. On its face the agreement is full and complete, and the several parts sensibly related to each other. Its form is of no consequence; the meaning is precisely the same as if the terms of the Solomon Shuman grant had been written at length in the paper signed by Swank.

An agreement between a landowner and a railroad company to sell the latter a right of way across the premises of the former, covers all damages of whatever sort suffered by the landowner, all for which he is legally entitled to compensation. This principle, recognized in the charge of the learned Judge of the Common Pleas, is so well settled and so reasonable that it has not been controverted. But the court held that the parties to the agreement in question contemplated compensation for other damages than the mere taking of land for the right of way, and that the general rule is not applicable; to this we are impelled to dissent. The parties contracted for " the right of way " for compensation to be ascertained at a certain rate per acre for the quantity of land occupied. No word or clause indicates a reservation by the landowner of the right to recover damages to other land, or to recover for the vines, trees and shrubs on the land taken for the way. Nothing is excepted out of the grant. The way defined in the contract is entire and within the general rule. So far as advised, the popular understanding of a grant of right of way for a railroad is, that it includes all the company may lawfully and adversely take from the grantor for use as a way. We are of opinion that the second assignment of error must be sustained.

Parol testimony is admissible to reform a written contract by varying or adding to its terms, on the ground of fraud or mistake. Previous negotiations of the parties are presumed to be merged in the written instrument. The court well remarked that it is competent for the maker of a contract to show by parol testimony that it would be a fraud upon him to take his land without the performance of the conditions on which he agreed to part with it. But the conditions ought to appear in the writing. If by mistake, or by design of the agent of the company, this contract does not fully express the agreement, it can be reformed in equity, and the reformation, according to the rules of evidence in equity proceedings, can be made at the trial of this action. Swank was the only witness who testified in support of the alleged " representations or misrepresentations " which, if established, change the terms

9 OUTERBRIDGE.—36.

[Stoetzel v. Jackson.]

of the written contract, or as submitted, actually set it aside. His testimony is uncorroborated—the allegation is denied by the other party and some testimony adduced of its untruth. Were the defendant in error in a court of equity, asking that the contract be reformed, or set aside, by reason of the alleged fraud, and the allegation denied, upon such testimony as adduced here, his bill would be at once dismissed. His testimony could not be considered by the chancellor, unless corroborated by another witness, or the equivalent of another. Unless there be such testimony as a chancellor could consider upon a question of this nature, it ought not to be submitted to a jury in a proceeding at law. In this State equity can be administered in actions tried in the law courts, but the rules of evidence in an equity case, and in a case at law, should not be confounded: Juniata B. & L. Association v. Hetzel, 7 Out., 707.

The ninth assignment of error raises the question of the sufficiency of the testimony to establish the fact that the agent of the company induced Swank to sign the agreement, by agreeing to locate the track on other land than that on which it is located, or to build an arch under said track at the old passage-way of Swank to the river. As already shown, it is insufficient, and the sixth point of the plaintiff below should have been refused. The same error also pervades the matter complained of in the third and eighth assignments.

We think the court rightly ruled on all the points raised, which have not been remarked.

> Judgment reversed, and venire facias de novo awarded.