## WILLIAM JONES v. PENNSYLVANIA R. CO.

APPEAL BY DEFENDANT'S EXRS. FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued March 26, 1891—Decided October 5, 1891.
[To be reported.]

(a) Pending an action for consequential injuries to land, the parties entered into a contract under seal, by which the valuation of the land at the time of the injury was referred to arbitrators, the defendant to pay the price awarded, and the plaintiff to convey the land to the defendant in fee-simple; said price when paid to extinguish the plaintiff's claim for damages :

1. It being shown that the appraisement was made, and that the defendant tendered the valuation to the plaintiff, who refused to accept it, the agreement was available as a defence to the action, although not pleaded until three years after the date of the award, and although, at the time of the trial, more than six years from said date had elapsed without any attempt of defendant to enforce specific performance.

2. The defendant did not need a conveyance of the land in order to make out such defence; and therefore, the fact that the plaintiff's wife refused to join in such conveyance, was of no possible consequence; and while, in the circumstances above stated, the plaintiff might keep his land, if he chose, he could not be permitted, after refusing a tender of the price, to keep the land and recover the damages both.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 111 January Term 1891, Sup. Ct.; court below, No. 445 June Term 1882, C. P. No. 2.

On June 21, 1882, William Jones brought trespass on the

case against the Pennsylvania Railroad Company, to recover damages for consequential injuries to plaintiff's real estate, caused by the building of the elevated Filbert street extension of defendant company's railroad. A declaration was filed July 19, 1884. On September 16, 1884, the defendant pleaded not guilty, and on October 12, 1886, filed an additional plea setting up specially an alleged submission and award, and a tender of the amount of the award. Issue.

At the trial, on February 10, 1890, the plaintiff having shown the construction, etc., of the Filbert street extension of the defendant's railroad, the pillars thereof being upon the sidewalk and the top of the road not more than four feet from the plaintiff's buildings, and the injuries caused thereby, rested, when the defendant put in evidence under its special plea the following submission, executed on November 7, 1883, by the plaintiff and by Mr. Fox and Mr. MacVeagh, representing the defendant company :

" Now, these presents witness that the undersigned hereby agree that the question as to the fair market value of each of said properties, No. 2129 Filbert street, and northeast corner of Twenty-second and Filbert streets, immediately before the Filbert street branch was known to be contemplated, say July 1, 1881, shall be submitted to the final decision of Henry R. Gummey and Craig D. Ritchie, Esqs., if they can agree upon the same ; if not, they shall have power to select an umpire whose decision shall be final ; it being agreed that the premises, northeast corner Twenty-second and Filbert streets, have been occupied for many years past as a blacksmith and wheelwright-shop by said William Jones, and that that fact shall be taken into consideration by the arbitrators, but no valuation shall be made of the good-will of the business, but a reasonable time (say three months) without rent and after that, if necessary, six months, under such rent as may be fixed by the arbitrators, shall be allowed said Jones to remove.

" The Pennsylvania Railroad Company agreeing to pay in cash the price so ascertained, with interest at three per cent., from said time at which the said properties are so valued, and the owner agreeing to give to said company a good fee-simple title to said premises clear of encumbrances. And it is expressly understood that the price, when paid for the property in

pursuance of this agreement, shall operate as a release to all claims of every character that the owner could make from the time of the location of the Filbert street branch to the date of said purchase."

· The defendant put in evidence, also, the following award made by the arbitrators named in the agreement, to whom had been referred, in like manner, the valuation of properties of other owners upon the same square :

" The undersigned arbitrators, to whom was referred the question of the values of certain properties situate on Twenty-first, Filbert, and Twenty-second streets, proposed to be purchased by the Pennsylvania Railroad Company, and specifically delineated on a plan thereof hereto annexed, hereby report the following award :

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * | * |

" William Jones, No. 2129 Filbert street,      .      $5,000
" William Jones, northeast corner Filbert and

       Twenty-second street      .      .      .      .      11,200

" The above sums being awarded to the owners respectively of the premises severally above mentioned as the full consideration therefor, and on payment thereof to the said several owners respectively, together with interest on the said several sums, at the rate of three per centum per annum from the first day of January, A. D. 1881, they, the said several owners, shall, by proper deeds of conveyance, grant, assure, and convey the said premises respectively to the said Pennsylvania Railroad Company, or to such person or persons as it may designate, in absolute fee-simple, clear of all ground-rents and all encumbrances whatsoever.    Titles to said premises to be made satisfactory to the counsel of the said railroad company, and rent and taxes to be adjusted to dates of the respective settlements.    And the said owners shall, at the same time, execute and deliver to the said railroad company a full and absolute release and discharge of all claims for any loss or damage by reason of the construction and use of the elevated railroad on the said Filbert street.

" By the terms of submissal, the said William Jones has the right to the occupancy of the premises now owned by him for the space of three months after conveyance thereof by him as aforesaid clear of rent, and the right further to continue to occupy the same for the further term of six months at such rent

as the arbitrators may determine. The undersigned decide that during the free occupancy of the premises, the said Jones shall pay the taxes and water rents thereon, and that if further occupied, the rent of No. 2129 Filbert street shall be twenty-five dollars per month, and the rent of premises at the corner of Twenty-second and Filbert streets at the rate of seven hundred dollars per annum.

" The expenses of this arbitration shall be paid, one half by the owners of the premises valued, and one half by the Pennsylvania Railroad Company.

" Witness our hands and seals the twenty-sixth day of November, 1883."

It was made to appear, also, that Mr. Frank Wolfe, acting as attorney for the several property owners named in the award, caused amicable actions against the defendant company to be entered on behalf of said property owners, the action in favor of William Jones being entered on November 13, 1883, to No. 723 September Term 1883, in the Court of Common Pleas No. 3 of Philadelphia county ; that he filed in said actions the agreements of submission and awards and caused judgments to be entered upon the awards in favor of the respective plaintiffs, and that afterward some of those judgments, including the one in favor of William Jones, were stricken off by the court. Testimony for the defendant tended to show that defendant's counsel objected to those judgments as irregular, asked plaintiff's counsel to have them stricken off, and that the motion upon which the judgment in favor of Jones was stricken off was made by his attorney, Mr. Longstreth. It was made to appear, further, that the arbitrators who made the awards were not sworn, and that they did not hear witnesses and did not give the parties notice of any meeting, but made the awards upon personal inspection and investigation.

The defendant showed, also, that on December 26, 1883, the board of directors of the defendant company by formal resolution approved the several awards made by the arbitrators, and directed payment of their amount, with interest at three per cent from January 1, 1881, to time of settlement, upon delivery of deeds for the properties, in fee-simple, clear of encumbrances, to said company or such person as it might designate, with releases of damages as set forth in the report of arbitrators, pro-

Charge of Court below.

vided that the conveyances and papers should be approved by the general solicitor of the company; that on December 31, 1884, Mr. Henry K. Fox, on behalf of the defendant, visited the plaintiff's premises, taking with him the amount of money payable to the plaintiff, Jones, upon the award in his favor, and read to the plaintiff a written tender, signed by Mr. Fox for the defendant company, in accordance with said award; and that upon the reading of the said tender, the plaintiff refused to accept it, and ordered Mr. Fox to leave his premises.

In rebuttal, the plaintiff testified that he never knowingly submitted the matter to arbitrators; that he signed a paper in the office of Mr. Wolfe, in blank, which he supposed Mr. Wolfe afterwards filled up; that as soon as the witness heard that an award was made, he objected to it because he thought he was not getting enough, and went to Mr. Wolfe and told him that he could not stand any such arbitration as that; and that within a few days after the date of the award, having been informed that his title papers were in the hands of Mr. Fox, the witness demanded his deeds and informed Mr. Fox that he could not stand such an arbitration. Mr. Fox testified in rebuttal for the defendant that, according to his recollection, he did not have the plaintiff's title papers until some time early in 1884, and therefore, such a conversation as that testified to by the plaintiff could not have occurred at the time the plaintiff named. It was admitted that the plaintiff's wife, immediately upon the appraisement being made known to her, declined to sign the deed to the defendant, and told the plaintiff that she would not release her dower in the property and would not join in the deed, and that she had not changed her mind.

The testimony being closed, the court, HARE, P. J., charged the jury in part as follows:

The defendant requests the court to charge:

1. The uncontradicted evidence being that the plaintiff agreed with the defendant in writing to sell to it the properties in suit at values or prices to be determined by arbitrators, and that the arbitrators duly fixed the said values or prices by an award in writing, and awarded the said sums to the plaintiff, and that the defendant, by formal action of its board of direct-

Charge of Court below.

ors, accepted and approved said award, and by its duly consti-
tuted agent tendered to the plaintiff, the said sums fixed, and
also tendered to the plaintiff, for execution, a deed and release
to be signed by him, but which was declined and refused by
the said plaintiff, the equitable title to the premises, for dam-
age to which this action is brought, has passed from the plaint-
iff to the defendant, and the verdict must be for the defendant.

Answer: Refused.

2. If the jury believe that the plaintiff agreed with the de-
fendant to sell to it the properties in suit at values or prices to
be determined by arbitrators, and that the arbitrators duly fixed
said values or prices, and awarded the same to the plaintiff,
and that the defendant accepted and approved said award, and
tendered to the plaintiff the said sums fixed, and also tendered
to the plaintiff, for execution, a deed and release to be signed
by him, but which was refused and declined by said plaintiff,
the verdict in this action for damages to the properties must
be for the defendant.

Answer : Refused.[4]

3. If the jury believe the defendant's witness, Henry K.
Fox, who testified that the alleged revocation of the submis- .
sion to the award of arbitrators by plaintiff was not communi-
cated to the defendant by plaintiff until long after the award had
been made and signed by the arbitrators and formally approved
by the board of directors of defendant, the plaintiff has no
cause of action, and the verdict must be for the defendant.

Answer: Refused.[5]

4. If, on the other hand, the jury believe the plaintiff him-
self, who testified that the alleged revocation of the submis-
sion to the award of arbitrators was not communicated to the
defendant by him until after the award had been signed by the
arbitrators, the plaintiff equally has no cause of action, and
the verdict must be for the defendant.

Answer: Refused.[6]

7. Under the special plea filed in this case on October 12,
1886,* if the jury find the following facts, viz.: That in the

---

* That plea averred the execution of the agreement of November 7,
1883, setting forth the substance and legal effect thereof; the award of
the arbitrators, making profert thereof; the formal acceptance of said
award by the defendant on December 26, 1883; the tender to the plaintiff

Charge of Court below.

year 1883, after the bringing of this suit, the plaintiff and defendant entered into the agreement in writing, dated November 7, 1883, which has been admitted in evidence; that afterwards, viz., on November 26, 1883, Henry R. Gummey and Craig D. Ritchie made the appraisement in writing which has been offered in evidence; that before any repudiation or attempted repudiation of the said agreement on the part of the plaintiff, the defendant afterwards, viz., on December 26, 1883, by resolution of its board of directors, accepted the terms of the said agreement and appraisement; and that afterwards, to wit, December 31, 1884, the defendant tendered to the plaintiff the sum of $17,658, being the full consideration for the said property with interest, together with the deeds for execution, which have been also offered in evidence; and that the plaintiff thereupon refused to accept the said purchase money and to execute, or cause to be executed, the said deeds, their verdict should be for the defendant.

Answer: Refused.[2]

8. If the jury believe from the evidence that the facts set forth in the additional special plea filed October 12, 1886, are true, their verdict should be for the defendant.

Answer: Refused.[3]

9. Under all the evidence. the verdict should be for the defendant.

Answer: Refused.[7]

[The agreement and the action under it is not a defence to this action, and its consideration as a defence is withdrawn from the jury.] [1]

I may add that, in deciding whether a jury will give damages in the nature of interest for delay in compensation, the question may arise, who was to blame for that delay; was it the plaintiff's fault or was it the defendant's fault that the money was not sooner paid? So far as that part of the case is concerned, I do not withdraw the agreement from you; I cannot do so because the papers in evidence will go out with you. If you find that the delay in payment arose from the fault of

---

of December 31, 1884, and its refusal; and concluded as follows: "By means whereof the said defendant became the equitable owner of the said premises."

Arguments.

the plaintiff, Mr. Jones, you may consider whether that ought to induce you to withhold interest. If it arose from the fault of Mr. Jones not taking the money that was offered him, you can consider that on the question of interest.

In using the expression that the agreement is to be left out of view, I mean in regard to the original sum claimed by the plaintiff and withheld by the defendant. In regard to additional damage on the question of interest, you may do as you see fit. You will say if the delay was the plaintiff's fault.

—The jury returned a verdict for the plaintiff for $10,000. Before judgment, the plaintiff died, and his executrices, Sarah M. Jones and Annie E. Jones, were substituted. A rule for a new trial having been discharged and judgment entered upon the verdict, the defendant took this appeal, assigning for error:

1. The part of the charge embraced in [ ] [1]

2–7. The refusal of defendant's points.[2 to 7]

*Mr. George Tucker Bispham* (with him *Mr. A. H. Wintersteen*), for the appellant:

1. The agreement of November 7, 1883, expressly released all such claims as the present, upon payment of the price of the property sold. The tender was equivalent to payment. The requirement in ejectment by a purchaser, that he shall bring the money into court: McGrew v. Foster, 113 Pa. 642; Orne v. Coal Co., 114 Pa. 172, obviously does not exist in such a case as the present. But, whatever the effect of the tender in fixing the legal rights of the parties may be, the present form of action, equitable in its character, cannot be maintained in the face of the agreement: Greenwalt v. Horner, 6 S. & R. 71; Bird v. Randall, 3 Burr. 1353; Gilmore v. Wilson, 53 Pa. 194; Phila. R. Co. v. Cooper, 105 Pa. 239. That a refusal of the wife to join in conveying would prevent specific performance, could not make the plaintiff's conduct equitable, so as to enable him to maintain this action: Corson v. Mulvany, 49 Pa. 88. But, independent of the express stipulation for release of damages, the agreement to sell was in law an implied release of the present claim: North Branch Ry. Co. v. Swank, 105 Pa. 555.

2. It was contended in the court below by the plaintiff that the case was one for the application of the doctrine that an accord without a satisfaction does not operate as a release.

There are several complete answers to this: (*a*) The agreement relied on is under seal: Savage v. Everman, 70 Pa. 315; Kidder v. Kidder, 33 Pa. 268. The absence of the railroad company's seal is immaterial, as the act of its attorneys in signing for it, and the act of its directors in formally ratifying the agreement and award, have made the agreement for all purposes mutual: Corson v. Mulvany, 49 Pa. 88; Smith's App., 69 Pa. 474. (*b*) The doctrine of accord and satisfaction has no legitimate place in this case. It is the case of a substituted agreement, which defeats the action upon the original liability: Good v. Cheesman, 2 B. & Ad. 328; North Branch Ry. Co. v. Swank, 105 Pa. 555; Christie v. Craige, 20 Pa. 430; Bradley v. Gregory, 2 Camp. 383. (*c*) And the absence of a technical satisfaction by reason of the plaintiff's refusal to accept the tender, cannot avail him, because of the equitable considerations that apply: Very v. Levy, 13 How. 345. It was also contended that the defendant had been guilty of laches; but its defence was raised by special plea filed October 12, 1886, less than three years after the date of the agreement. As to another objection, that the arbitrators were not authorized to direct the payment of taxes by the plaintiff, we reply that this was only one way of fixing the price, and, moreover, the resolution and the tender made did not exact this.

*Mr. Theodore F. Jenkins*, for the appellees:

1. Taken in its most favorable light for the defendant, the agreement of November 7, 1883, was a contract for the sale of real estate, at a price to be fixed by persons named. So considering it, the defendant could recover no more than nominal damages, in an action for its breach, without showing that the value of the land exceeded the price: Hennershotz v. Gallagher, 124 Pa. 1. An action for such damages could not affect the plaintiff's rights in the present case, for the agreement provided that only the consummation of the contract by payment of the purchase money should operate as a release. Nor could such claim for damages be defalked in the present action; because, (*a*) the breach of contract, giving rise to the damages, must be complete at the time of suit brought: Zuck v. McClure, 98 Pa. 541; Roig v. Tim, 103 Pa. 115; Gunnis v. Cluff, 111 Pa. 512; and (*b*) set-off is not admissible in an action for a tort:

Kater v. Steinruck, 40 Pa. 501; Arthur v. Sylvester, 105 Pa. 233.

2. The defendant might have filed a bill for specific performance, and obtained an injunction to stay this action pending the bill, but, however clear its equity might be, it cannot be enforced in such an action as this: 1 Chitty Pl., 469; Wurtz v. Musselman, 5 W. 95. The defendant has done nothing to enforce the contract, and at the time of the trial of this case the limitation of § 6, act of April 22, 1856, P. L. 532, had closed down. And the defendant has been guilty of inexcusable laches, especially as the plaintiff gave notice that he would not perform the contract: Fry on Spec. Perf., 423; Parkin v. Thorold, 16 Beav. 59; Colby v. Gadsden, 34 Beav. 416; Porter v. Dougherty, 25 Pa. 405.

3. The rights of the defendant, if any, arose as of the date of the agreement, November 7, 1883: Green St. Ry. Co. v. Moore, 64 Pa. 79; and therefore, as they arose after the commencement of the action, they could not be pleaded in bar generally, and it was too late to plead them after the plea of the general issue put in on September 16, 1884: Yeaton v. Lynn, 5 Pet. 224; 1 Chitty Pl., 657. The plea filed October 12, 1886, was a nullity. That plea, however, sets up a mere accord, without satisfaction, which is no defence, tender not being equivalent to payment: Hearn v. Kiehl, 38 Pa. 147. The filing of the amicable action and the submission and award in the Court of Common Pleas No. 3, shows that the arbitration of a pending suit was contemplated. The submission covered matters not included in the narr, and therefore was unauthorized: Wilson v. Brown, 82 Pa. 437. And, as the court did not approve the award, but struck it off, it fell: § 3, act of 1705, 1 Sm. L. 50.

OPINION, MR. JUSTICE GREEN:

This proceeding is not a bill in equity to compel the specific performance of a contract for the sale of land, nor is it an action to recover damages for the breach of such a contract. On the contrary, it is an action of case brought by the owner of land against a railroad company to recover consequential damages for injury to, without taking any part of the plaintiff's land.

On the trial, the defendant gave in evidence an agreement in

writing and under seal between the parties, which was made after the action was brought and while it was pending, the substance of which was that the parties agreed to submit the question of the valuation of the plaintiff's premises to persons named, and that thereupon the defendant should pay the amount of the valuation to the plaintiff, upon his giving a good fee-simple title for the premises to the defendant clear of encumbrances. It was further agreed that the price, when paid, should operate as a release of all claims of every character which the owner could make, from the location of the road to the date of the purchase. The defendant further gave in evidence proof that a valuation was subsequently made by the persons named; that the defendant thereupon tendered payment of the amount of the valuation, together with a deed for execution, and also proper releases of liens; but that the plaintiff positively refused either to receive the money, or to execute any deed for the premises, or to obtain any release of liens. He also gave notice that he would not be bound by the valuation of the appraisers, because they had not given him as much as he wanted. In short, he simply violated his contract, and then proceeded to try his action to recover damages, in entire disregard of his agreement.

The learned court below instructed the jury that the agreement and the action under it, were not a defence to the present action, and withdrew it from the consideration of the jury altogether. No reason was given by the court for this ruling, and, no opinion having been filed, we are not informed as to what the reasons were. As we are not able to take that view of the contract between the parties, we would have been glad to know upon what grounds the learned court proceeded in rejecting the agreement altogether. It is a perfectly lawful contract, which the parties were entirely competent to make. It was carried into effect by the appraisers having made the valuation in question; it was never revoked by the plaintiff, and the defendant tendered full compliance with its terms. Why was not the plaintiff bound to perform it on his part? It is contended by the learned counsel for the appellee that the only remedies available to the defendant under it, would be by a bill for specific performance, or an action to recover damages for its breach, and that at most it can be considered

as an accord and satisfaction, but void as a defence, because
there was no satisfaction.  But these propositions do not meet
the question.  The agreement is set up by the defendant to
prevent the recovery of damages, in accordance with the terms
of the agreement.  Why is it not a defence?  It is no answer
to say that the defendant might have filed a bill for specific
performance, or might have brought an action to recover dam-
ages for its breach.  The defendant has done nothing of that
kind.  It has simply asked that the plaintiff shall be held to
his contract.  No bill for specific performance has been filed,
and the rules which pertain to that kind of remedy have no
place in the discussion.  The same is true as to the action to
recover damages for breach of the contract.  No such action
has been brought, and the consideration of that subject is not
pertinent.  The question simply is, shall the plaintiff be per-
mitted to recover damages for a consequential injury to his
land, and also keep the land, when he agreed with the defend-
ant that he would release the damages if the defendant would
pay him for the land a price to be fixed by persons agreed
upon, and the defendant has offered to pay the price and ten-
dered the money for it?  Why should he be permitted to do
this in violation of his contract?

There is nothing contrary to law in such a contract.  In the
case of North Branch Ry. Co. v. Swank, 105 Pa. 555, we sus-
tained such a contract, and compelled the owner to abide by
it, although it was not by any means so precise and specific as
this one, and contained no express provision releasing dama-
ges; and although, also, in that case the land of the owner was
taken, whereas here it is not.  We held there that " an agree-
ment between a landowner and a railroad company to sell the
latter a right of way across the premises of the former, covers
all damages, of whatsoever sort, suffered by the landowner,
all for which he is legally entitled to compensation."  In the
present case, there is an express provision in the contract that
the payment of the price shall release " all claims of every char-
acter that the owner could make."  It cannot be that the owner
shall be permitted to refuse payment of the price, and then say,
" The price has not been paid, and therefore I am not bound."
Moreover, in this case no land is taken by the defendant.  If
the plaintiff chooses, he can keep his land, all of it, but it can-

not be tolerated that he shall both keep his land and recover damages contrary to his agreement besides; and therefore it is that the refusal of the wife to join in the deed for the land is of no possible consequence. The only result of such refusal is that a conveyance of the land cannot be compelled without a tender of the whole price for a deed signed by the husband alone. But here there is no question of compelling a conveyance of the land. The defendant is not obliged to have such a conveyance in order to make out its defence. The only question is, shall the plaintiff keep his contract? We know of no reason why he should not. If he choose to break his contract, and refuse to receive what he agreed he would receive for his land, with a release of his consequential damages, he can keep his land, but he cannot keep his land and recover the damages both. There is no question of accord and satisfaction in the case, and a discussion of that question is without relevancy.

The first, second, third, and fourth assignments are sustained, and on them the judgment is reversed.

Judgment reversed, and new venire awarded.