## Pettit, Appellant, *v.* Jamestown & Franklin Railroad Company.

*Lateral support—Deed—Grant in fee simple—Railroad—Damages.*

The right of the owner to lateral support of his land is a natural right. It is not simply an easement, but an incident to the land, a right of property necessarily and naturally attached to and passing with the soil.

Where an owner of a tract of land conveys by deed a fee simple title in a strip of land through his tract to an individual described as trustee, and the strip of land is particularly described by reference to the location survey of a railroad, and the deed reserves a railroad crossing over

the strip, and the right to lay pipe lines under it, and subsequently the grantee conveys the strip to a railroad company, such company, in the absence of any provision in the deed to the trustee obligating the latter to build a railroad, and in the absence of any release of damages, owes to the land on each side of the strip the duty of lateral support; and if the company in constructing its railroad causes such land to fall, it will be liable in damages to the owner.

Argued Oct. 9, 1908. Appeal, No. 219, Oct. T., 1908, by plaintiff, from judgment of C. P. Venango Co., Aug. T., 1907, No. 72, on verdict for defendant in case of Joseph Pettit v. Jamestown & Franklin Railroad Company. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for injuries to land caused by the removal of lateral support. Before CRISWELL, P. J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Robert F. Glenn* and *Peter M. Speer*, for appellant.—The deed in question is not a general grant or release of damages for right of way, but is a deed in fee simple. It is not such an easement as would be acquired by a mere grant of a right of way or by condemnation proceedings, in both of which cases there would be a reversion to the owner when the land ceased to be used for railroad purposes. Here we have a deed in fee simple for a definite piece of land with no reversion to the owner in any event and therefore the grantee is beyond question an abutting owner and bound by the law of lateral support: McCullough v. Ry. Co., 52 Minn. 12 (53 N. W. Repr. 802); Mosier v. Oregon Nav. Co., 39 Ore. 256 (64 Pac. Repr. 453); Stodghill v. Railroad Co., 43 Iowa, 26; Booth v. Railroad Co., 140 N. Y. 267 (35 N. E. Repr. 592); Roushlange v. Railway Co., 115 Ind. 106 (17 N. E. Repr. 198); Richardson v. Railroad

Co., 25 Vt. 465; Williams v. Natural Bridge Plank Road Co.,
21 Mo. 580; Stearns v. Richmond, 88 Va. 992 (14 S. E. Repr.
847).

A. R. *Osmer* and J. H. *Osmer*, with them N. F. *Osmer*, for
appellee.—There was no duty of lateral support on the defend-
ant: Arnold v. Ry. Co., 32 Pa. Superior Ct. 452; White v. Ry.
Co., 15 Pa. Dist. Rep. 976; North & West Branch Ry. Co. v.
Swank, 105 Pa. 555; Rudolph v. Penna. Schuylkill Valley R. R.
Co., 186 Pa. 541; Ludlow v. R. R. Co., 4 Hun (N. Y.), 239;
Updegrove v. R. R. Co., 132 Pa. 540.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:

This is an action of trespass brought by the plaintiff to re-
cover damages from the defendant for injuries which he al-
leges he sustained by reason of the removal of the lateral
support from his land. The court directed a verdict for the
defendant and judgment having been entered thereon, the
plaintiff has taken this appeal.

In the year 1905 the estate of S. P. McCalmont, deceased,
was the owner of several tracts of land in Venango county,
one of which lay along the Allegheny river and contained about
135 acres. By deed dated January 23, 1905, McCalmont's
executors conveyed in fee simple to F. J. Jerome, trustee, a
part of this tract, being a strip adjoining and extending along
the Allegheny river about 190 rods and containing 15.6 acres.
The land conveyed was particularly described by reference to
the location survey of the defendant's railroad. In the de-
scription a reference is made to a map attached to the deed
for a further description of the premises conveyed. Reserva-
tions were made of the oil and gas, a railroad crossing over the
premises conveyed, and the right to lay pipes and oil lines un-
der the railroad. By deed, dated November 28, 1905, Jerome
conveyed the same land to The Jamestown & Franklin Railroad
Company, the defendant in this action, which prior thereto
had located a railroad over it.

After the sale to Jerome, McCalmont's executors sold the
residue of the tract of which the Jerome land was a part to

Joseph Pettit, the plaintiff, and conveyed it to him in fee by deed dated February 10, 1906. Subsequent to this purchase by Pettit, the defendant company constructed the railroad upon the strip of land which it had acquired from Jerome. The plaintiff alleges, as his cause of action, that in the construction of the road, the defendant "removed or caused to be removed the lateral support of plaintiff's land lying and being on the side of the hill adjacent to defendant's proposed line of railroad, to such an extent, and in such a manner that the surface of the earth on said hillside cracked or opened, and slid down the hill, carrying with it derricks, machinery and other appliances placed thereon by plaintiff, and used by him in the production of oil therefrom, and destroying the oil wells thereon and the fixtures and fittings therein." It seems that the strip of land purchased by Jerome and now held by the defendant company lay along a steep hillside extending from the Allegheny river above and beyond the defendant's premises, and that outside of the defendant's land the plaintiff was operating extensively for oil and had put down several wells. In the construction of the railroad it was necessary to make several deep cuts and excavations in the premises, and the plaintiff claims that in doing so the defendant caused the hillside, a part of his land, to slip and slide down the hill towards the river and carry with it his oil wells and other property.

There is no allegation of fraud, accident or mistake in the execution or delivery of the deed by McCalmont's executors to Jerome, nor is it claimed that it does not express the agreement of the parties relative to the land conveyed. No attempt has been made by either party to reform it so as to make it express a different intention or a different purpose. It must, therefore, be taken to be the contract of the parties, and as such it must speak for itself and determine their rights. Hence the single question in the case is whether the title acquired by the Jerome deed justifies the defendant company in digging and excavating on its own premises in constructing its road so near to the plaintiff's land as to remove the lateral support, and thereby cause the plaintiff's land to subside and fall into the excavation. The trial judge held that it was apparent

from the evidence in the case that the strip of land was purchased by Jerome as trustee for the defendant company for the purpose of constructing a railroad thereon, and that the deed conveyed the premises to Jerome and released the defendant company from all damages, including the withdrawal of lateral support occasioned by the construction of the railroad. On this ground the learned judge directed a verdict for the defendant company.

The court below in its opinion refusing a new trial says: "If the damages had been assessed under the statute clearly the probability of the injury now complained of would have been considered and the assessment would have covered it." The theory of the learned judge seemed to be that the premises were acquired by Jerome for a right of way of a railroad, that the grantors knew this fact and that the deed took the place of condemnation proceedings. In other words, the learned judge regarded the deed by which the premises were conveyed to Jerome as vesting in the grantee the same title and relieving him from damages to the same extent as condemnation proceedings instituted under the statute by a railroad company for the assessment of damages. In this we think the court was in error.

The defendant company does not claim to occupy the strip of land by virtue of the authority conferred by eminent domain. It unquestionably had the right to enter upon and condemn the strip of land for the purposes of its railroad. In doing so it had the right to appropriate a strip of land sixty-six feet in width and a greater width at cuts and embankments for the use of its railroad. The statute confers this power upon railroad companies. It recognizes the necessity in various parts of the state of deep cuttings and embankments in order to make a proper location. While, therefore, the statute confines the company to a width of sixty-six feet at grade for its road, it confers authority to take a greater width where cuts or fills are necessary to make the statutory width at grade. While this authority is conferred on railroad companies, the statute manifestly regards the appropriation of the extra width as a "taking" under the constitution and requires due compensa-

tion to be made for it in the assessment of damages.  The general railroad act of 1849 is broad in its provisions and confers on the railroad company the authority to take the necessary land, not only for its roadbed but also for its depots, warehouses, offices, etc., and "for any purpose necessary or useful in the construction, maintenance or repairs in said railroad." It also confers authority upon the company "to take, excavate and embank, make, grade and lay down and construct the road."  But the owner of the land is fully protected by the statute which requires the railroad company to make "compensation proper for the damage done or likely to be done to, or sustained by any such owner," and this includes compensation not only for the strip of land sixty-six feet in width at grade, but for the additional width taken at cuts and fills.  Any present or future injury which the owner may sustain by the construction of the road must be compensated for by the company.  It is not only the damage which presently results from the construction of the road, but also that which is "likely to be done" thereby that is the measure of the owner's compensation for the injury done him.  It will therefore be observed that a railroad company, under eminent domain proceedings, may appropriate for its use a strip of land of the statutory width, and also when necessary, may take a greater width at cuts and fills, but compensation must include damages for the additional ground taken.

Is the deed by which Jerome acquired title to the strip of land from McCalmont's executors the equivalent of condemnation proceedings in conferring upon Jerome or his grantee the right to enter upon the strip of land and construct a railroad thereon, and does the compensation named therein cover the damages which would be assessed in condemnation proceedings?  A reference to the deed will answer this question in the negative.  It is an ordinary deed conveying a fee simple title to the strip of land described in it.  The consideration therein named is the price of the land conveyed and not compensation for damages resulting from the construction of a railroad thereon.  The purchaser takes a fee simple title, the same as any individual or other purchaser under a similar

deed. The deed does not convey "a right of way for railroad purposes," nor does it convey the strip of land for railroad purposes. There is nothing in it disclosing an intention to convey the land for any particular purpose, or requiring the grantee to use it for any specific purpose. He acquires a fee simple title, and, so far as the grantors are concerned, he may convey it to whomsoever he pleases, or he may make any use of it which he may desire, so long as he does not offend the law. In other words, Jerome acquired the title to this strip of land by a conveyance in fee simple and the McCalmont title in the premises passed to him absolutely. As he purchased as a trustee, he was responsible only to his cestui que trust who might be an individual or a corporation. The owner has the right to put any lawful structure on it or use it for any lawful purpose he sees fit. He may operate for oil or gas and use it exclusively for that purpose. He may devote it to manufacturing purposes. If he abandon it, the title will not revest in McCalmont's executors, the grantors.

It is true that the property is described by reference to the location survey line of a railroad. It is likewise true that there is a reservation in the deed that gives the grantor a crossing over any railroad that may be constructed on the premises and also authorizes him to lay pipe lines under the railroad. But the description and reservations do not deprive the grant of its fee simple character or compel the grantee to use it for railroad purposes. The strong probability is that the land was acquired for the purpose of constructing a railroad thereon, but there is not a single line in the deed that compels the grantee to construct the road or deprives him of any right to which a fee simple owner of land is entitled. If, the day after the delivery of the deed by Jerome to the defendant company, the latter had concluded to construct its road on the opposite side of the Allegheny river and not over this land it could have sold and conveyed the land in fee simple and the grantee would have taken the title, subject to the reservations in the Jerome deed. It is apparent, therefore, that there is nothing in the deed to Jerome which shows that the premises conveyed were to be used for railroad purposes or that compels the grantee to

apply them to such purposes. Neither is there anything in the deed that shows that the grantors intended or agreed that the premises should be used for railroad purposes, or that they received any compensation for damages which would result to the residue of the farm from the construction of a railroad on the strip of land acquired by the grant. Their conveyance being a fee simple title, the property passed from them, and the purpose for which it was acquired or the use to which it might thereafter be put was solely for the determination of the grantee.

The defendant company, therefore, holds the premises in fee, subject only to the reservations named in the McCalmont deed. So far as the grantors are concerned, it occupies the same position as an individual who had acquired the fee simple title. It has the same rights and is subject to the same duties and obligations in the use of the premises as an individual were he occupying its place.

In the Jerome deed, there is no release of damages arising from the construction of a railroad over the premises conveyed, nor is there a release authorizing the defendant with impunity to do any other act on the premises which would unlawfully injure the residue of the tract now owned by the plaintiff. If, therefore, an individual would be liable for damages for the injury complained of in this action, the defendant company is equally liable and must respond in damages for the injuries done.

It is settled law that the owner of land is entitled to have it supported and protected in its natural condition by the soil of the adjoining proprietors. In the case of land, which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor, and if the neighbor digs upon and improves his own land so as to injure this right he may maintain an action against him without proof of negligence: Gilmore v. Driscoll (Mass.), 23 Am. Rep. 312. Neither of the owners of adjacent land has the right to excavate his soil so as to cause that of his neighbor to be loosened and fall into such excavation: Washburn on Easements, 514. The right of the owner to lateral

support of his land is a natural right. It is not simply an easement, but an incident to the land, a right of property necessarily and naturally attached to and passing with the soil: Wier's Appeal, 81* Pa. 203; McGettigan v. Potts, 149 Pa. 155; McGuire v. Graft (N. J.), 67 Am. Dec. 49; Farrand v. Marshall, 19 Barb. 380. There can be no question that if an individual owned the strip of land sold to the defendant and on which its road was constructed, he would be liable for the withdrawal of the lateral support to the plaintiff's land. This is the common law and it obtains in this as well as in other jurisdictions.

We have examined our own cases on the subject and none of them supports the contention of the defendant. In the cases cited by defendant's counsel, with possibly one exception to which we will refer hereafter, there was a release of damages or something equivalent thereto. Of course, the owner of land cannot claim damages for injury done by the construction of a railroad on a strip of land which he had sold and, by the instrument conveying it, had also released the purchaser from liability for damages to the residue of the tract by reason of the construction of the railroad. When the deed conveying the premises sufficiently discloses an intention not only to pass the title to the land but also to release the grantee from damages by reason of the construction of a railroad on the premises granted, the two purposes disclosed by the deed must be carried out and the deed will not only convey the title but will also release the damages.

The recent case of Hendler v. Lehigh Valley Railroad Company, 209 Pa. 256, was trespass against the company for taking sand outside of its right of way which it had acquired by an agreement with the owner of the land. In sustaining a judgment for the plaintiff this court, by the present chief justice, said (p. 262): "When therefore a railroad company obtains a right of way, either by condemnation or as in this case by an equivalent agreement, it has the right to use without further compensation all the suitable materials, except timber, within the lines of its survey, for construction of its road through the property of the landowner. . . . If it is necessary to go outside the lines of their right of way for sufficient width to

support an embankment they may do so but must pay for the additional land occupied, and so if it is necessary to go outside the lines to give the walls of a cut the slope required to prevent sliding or washing down they may do so on paying for the additional materials taken outside."

North and West Branch Railway Company v. Swank, 105 Pa. 555, is relied on by the defendant to sustain its contention that the company is relieved from damages for the injuries complained of in this case. That case, however, does not sustain the defendant's position. The contract was not a deed conveying the premises in fee simple. It was an agreement that the railroad company "shall have the right of way through my land" for "the amount of damages" fixed by an agreement between the railroad company and the owner of another tract of land through which the road was constructed. That was simply an agreement that the company should have "a right of way" for the damages agreed upon by the parties. The railroad company therefore got by the agreement precisely what it would have secured under condemnation proceedings, simply a right of way, and it paid therefor the amount of damages fixed by the parties. Under the agreement, if the railroad company had subsequently vacated the premises, the land would have reverted to the owner. The damages agreed upon of course included compensation for all the injuries done the owner by reason of the taking of the land for railroad purposes and the construction of the road thereon. The company could not have devoted the land to any other purpose without forfeiting it to the former owner. The agreement simply took the place of condemnation proceedings, and when it was interposed as a defense to the proceedings instituted by the owner to have damages assessed for the construction of the road, it necessarily deprived him of the right to recover. The agreement did not, as does the deed in the case in hand, convey a fee simple title to the land, but is simply a release of damages, and was so regarded by this court in Rudolph v. Pennsylvania Schuylkill Valley Railroad Company, 186 Pa. 541, in which we say (p. 554): "In several cases commencing with Railway Company v. Swank, 105 Pa. 555, we have held that a mere

release by the owner of a right of way was a bar to a subsequent action for damages for the construction and lawful operation of the railroad."

We are of opinion that the defendant company occupies the same position here as an individual owning property adjacent to the plaintiff's land, that the deed to Jerome from the plaintiff's predecessor in title does not release the damages to the residue of the land arising from the construction of a railroad on the land conveyed to the company, and that the company is liable for any injury which the adjacent property has sustained by reason of the removal of lateral support.

The judgment is reversed and a venire facias de novo awarded.