## Piro v. Shipley, Appellant.

*Equity—Jurisdiction—Prior adjudication of law—Injunction.*

A court of equity will restrain a threatened interference with the exercise of a right without a prior adjudication at law where the right is clear, and there is no serious dispute as to any of the material facts. It is not enough for the defendant to deny plaintiff's right; his denial must be based upon facts which show a substantial dispute.

*Easement—Express grant—Enjoyment of easement.*

In the case of an easement by express grant, the rights and liabilities of the parties are determined by the terms of the agreement, and each has a right to insist that the terms of the agreement. be complied with, and that, so long as the easement is enjoyed, it shall remain substantially as it was at the time the right accrued, regardless of whether benefit or damages will result from a proposed change.

A bill in equity to enjoin a change in the structure and location of an outbuilding in which plaintiff and defendants have a common easement, will be sustained where it appears that there is no necessity for the change, that the plaintiff objects to it, and that it would involve a most material and undesirable alteration in the plaintiff's easement. In such a case the court will not only enjoin further new construction, but will decree the restoration of the outbuilding where it originally stood.

Argued Jan. 10, 1905. Appeal, No. 185, Jan. T., 1904, by defendant, from decree of C. P. No. 1, Phila. Co., March T., 1903, No. 4433, on bill in equity in case of Pasquale Piro v. Samuel R. Shipley et al., Trustees of Stephen Smith, deceased; Roland R. Foulke et al., Respondents. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

BIDDLE, P. J., reported the facts to be as follows:

1. That the plaintiff owns the property on the southeast corner of Ninth and Christian streets, known as 848 Christian street, having obtained it by deed dated October 28, 1899, from one D'Amico, who acquired it by deed dated October 2, 1889, from one D'Ambrosio, who had acquired it by deed dated September 28, 1889, from the heirs of Thomas Prentiss, deceased, who, in his lifetime, obtained it from Stephen Smith by deed dated May 21, 1867; Smith having acquired it with additional adjoining property from one David S. Brown by deed dated April 4, 1846.

2. That in all the deeds referred to since the one dated May 21, 1867, made by Stephen Smith and wife to Thomas Prentiss, the description in the deeds have been uniform and alike, the respective grantors describing the property situate at the corner of Ninth and Christian streets as containing in front on Christian street fifteen feet and in depth along Ninth street thirty-two feet, and also contained the following grant:

" Together with the free and common use, right, liberty and privilege of the privy and privy well situated on the premises adjoining on the east, and the right of ingress, egress and regress of, in, to and from the same as the same is now used, occupied and enjoyed. Together with the ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatever thereunto belonging or in anywise appertaining."

3. That the property acquired by Stephen Smith by deed dated April 4, 1846, was a lot of ground, containing twenty feet in front on Christian street, and extending of that width in depth along Ninth street ninety-five feet. That at that time, there was erected on the lot of twenty feet acquired by him, and fronting on Christian street, a three-story brick building with a two-story brick back building, both having a width of fifteen feet, and extending southwardly from Christian street of the above width, thirty-two feet, leaving on the east side of the building as a part of the lot or piece of ground so conveyed to Smith, five feet of ground that extended southwardly from Christian street, the full depth of the building thirty-two feet, and beyond it sixty-three feet in conjunction with the other ground obtained by Smith from Brown by that deed, which gave Smith a lot twenty feet in width, and in depth parallel with Ninth street beyond his brick building at the corner, of sixty-three feet, making his entire lot of ground ninety-five feet in depth.

4. That nine days after acquiring the corner building of fifteen feet extending back thirty-two feet, and the lot of ground upon which said building was erected of twenty feet by ninety-five feet, Stephen Smith obtained from one Edward Johnson by deed dated April 13, 1846, a lot or piece of ground (adjoining his previously acquired lot on the east) described as situated on the south side of Christian street at the distance of twenty

feet east of Ninth street, and extending of that width in depth southwardly ninety-five feet, upon which there was a frame building, which was afterwards torn down or removed between April, 1846, and his conveyance to Smith in 1867.

5. That between April, 1846, and Smith's conveyance to Thomas Prentiss in 1867, a period of more than twenty-one years, Smith removed the frame building upon the lot of ground he acquired of Edward Johnson, and erected two three-story brick buildings now known as 844 and 846 Christian street, constructing a separate western wall for 846 Christian street close to, if not directly up and against, the eastern wall of the brick building of the corner property acquired from Brown known as 848 Christian street, which was then Smith's property, but now belongs to the plaintiff.

6. That the plaintiff's property at the corner of Ninth and Christian streets, built prior to 1846, never had a chimney in it for the use or convenience of its owners, tenants or occupiers.

7. That in building the two three-story brick buildings, now known as 844 and 846 Christian street, Stephen Smith used the twenty feet in front of the ground he acquired from Johnson, and also the five feet or unoccupied piece of ground that he acquired from Brown before acquiring Johnson's lot, and which adjoined the corner property on the east, in constructing the new three-story brick building 844 and 846, he left an open space for an alley between those two houses, which he built to form the second floor of one, or a part of the second floor of both of those houses, and had the alley to extend from Christian southwardly the depth of his new brick buildings about twelve feet, and at the southern end of the alley he constructed a party fence between those two properties with a gate on either side opening into each of the yards, and this fence extended southwardly to a brick privy or outhouse erected on the rear end of his three lots that fronted on Christian street. This brick privy or outhouse was constructed to form three apartments or separate inclosures, so that there should be one for each one of his three lots, viz.: one with a separate door on the east side of the fence for the use of 844 Christian street, and two on the west side of the fence with separate doors and apartments as stated, for the use of 846 and 848 Christian street, the latter being the corner property owned by the plaintiff as above stated.

The door for the plaintiff's apartment or inclosure in this brick privy or outhouse was located about nine feet eastwardly of the kitchen door of plaintiff's property leading into the yard that had been formed by the fence referred to, and about three feet southward from that kitchen door. In this fence erected by Smith, he also put a hydrant with a turning spigot or nozzle, so that the same could be used by the occupants of the properties on either or both sides of the fence. The plaintiff's property had no other yard than that formed by the fence which left an open space between it and the plaintiff's house to be used in common with 846, and plaintiff's property 848 Christian street, that yard having been made of part of the five feet of ground that was originally conveyed with the corner property in the deed from Brown to Smith.

8. That the physical condition, appearances and uses of said fence, hydrant, brick privy or outhouse as last above described, were the conditions, appearances and uses of the three properties at the time Stephen Smith conveyed to Thomas Prentiss in May, 1867, and they remained the same without any interruption from that time until the month of May or June, 1903, when the trustees under the will of Stephen Smith, who had died in 1874, undertook to alter and improve the properties known as 844 and 846 Christian street, and in doing so tore down and destroyed the brick privy or outhouse referred to; had the well thereunder filled up, and disturbed plaintiff's use of the chimneys that he and his predecessors in the title had been using; removed the hydrant and the fence referred to, erected a small frame water-closet in the place of the old brick privy or outhouse, putting the new frame water-closet and hopper connected with underground drainage for the sole use of the plaintiff, located at the distance of about four feet east of the plaintiff's building, and about four or five feet from the plaintiff's kitchen door, and propose and threaten to construct a fence across the open space extending from said kitchen door diagonally to said water-closet so as to confine the plaintiff, his property and his use of the same to the limited space inclosed within said new fence to be erected, whereby the plaintiff will be deprived of the use of the yard that has been enjoyed in common with the owners, tenants and occupiers of the property 846 Christian street for more than

thirty-six years, and also will be deprived and prevented from enjoying the free ingress, egress and regress in, to and from the well granted to him, and to the said Thomas Prentiss in 1867, and uninterruptedly enjoyed since that time.

9. The eastern wall of plaintiff's corner property was less than nine inches thick (it was built before 1846, and before the passage of the act of assembly regulating the thickness of walls of buildings passed May 7, 1855, sec. 8, P. L. 464), and when the building was erected, it was constructed without any chimney, but, being then in a rural part of the country, and having an open space curtilage to and a part of the lot upon which the building was erected (of not less than five feet according to the deeds), chimneys could then be dispensed with, and stoves used without them.

10. That the wall was less than nine inches thick.

11. When Stephen Smith, the owner of the three properties 844, 846, 848 Christian street, erected the two small three-story brick buildings, 844, 846 Christian street before 1867, he appropriated, used, and took from the corner property (848 Christian street) its curtilage of five feet of ground, and open space to the east of it and built No. 846 Christian street up against the eastern wall of the corner property 848 Christian street, deprived of its yard or ground on the east (cut off its original natural resources, doubtless used as substitute for chimneys), made the alley, erected the fence, dug privy well (over which was erected a large brick house with the three inclosures above mentioned), and placed the hydrant in the fence as described among the "undisputed facts."

12. It must be concluded that Stephen Smith, who had owned the corner property 848 Christian street from April 4, 1846, knew that that property possessed no chimneys, and, being deprived of its natural outlet on the east in constructing the wall of 846, he so constructed it that the chimneys of that building were placed on its western side, so that they could be utilized and used for both of his properties, 846 and 848 Christian street, connected with openings in each house united by terra cotta pipes.

13. The right to use the alley, the hydrant and the chimneys, in addition to the privy provided for by express grant in the deed, was, and is, part of the appurtenances granted by the

deed from Smith to Prentiss, and to the subsequent owners of the title down to the time of the disturbance by the defendants is clearly established by the testimony.

14. Miss Anna A. McPeak, a school teacher (in no wise interested in the case), over forty-five years of age, whose father was an alderman, and who moved into the corner property in 1856, testified that she was born in that house, and lived there until 1877 or 1879, and states most positively that she lived there over twenty years, and " that the alley, the hydrant, the privy and chimneys were a part of our property, (meaning the corner property of 848 Christian street), and used as such." Without referring to her testimony concerning the brick privy or outhouse, about the existence of which there is no dispute by the defendant, in speaking of the hydrant, the witness, after indicating on the plan where the hydrant stood, said it was right on a line with the houses on Christian street. The alley proceeded from the back door of the two houses on Christian street as marked in the red lines on the plan. " I always used that alley when I lived there; was never interfered with and never interfered with in the use of the chimneys." So clear, positive and uninterrupted was the use of the chimney erected on the adjoining property by the corner property that this witness did not know that the chimneys were not built in her (corner) house.

On cross-examination, she said: " We used the yard in common. There was only one yard for two houses, and one hydrant for three houses. I am quite sure that I lived in the property at the corner. Stephen Smith owned the property and sold it to my uncle, Thomas Prentiss; my father rented from Stephen Smith (this was when he first went there in 1856). When Stephen Smith sold the property to my uncle (this was in May, 1867), my father still stayed there and lived there a number of years after that. It was my uncle's property; we lived there; we did not rent; we were not tenants. I lived in my uncle's property from 1857 to 1879."

15. The testimony of Anna A. McPeak clearly establishes the plaintiff's claim as to the use of the alley, hydrant, chimneys and brick privy. She is corroborated about the use of the hydrant, the alley and the privy well by the different witnesses for plaintiff, viz:

16. Guiseppe Pasquarella, who was familiar with the property and its uses after Miss McPeak vacated it, down to the present time, or for a period of twenty-four years. This witness, although a frequent visitor to the house, had never paid any attention to the chimneys, and had no personal knowledge about them. He testified, however, that eighteen years ago, the corner property was used as a saloon, and the alley was used as a passageway from Christian street, to the back door of the corner (saloon) property, and for the purpose of carrying in and out the beer, ashes, and whatever uses the people saw proper to make of it.

17. Frank Rose, another witness for the plaintiff, who was superintendent of a gang of Italian street cleaners, and who has known the property for over twenty-seven years, testified to the use of the alley and the hydrant, and that when the property was occupied as a saloon, he and hundreds of others would use the alleyway as a part of the saloon property. That the saloonkeeper told them to go up the alley; that it was for his (the saloonkeeper's) use. He also testified as to the common use of the hydrant for the property.

18. Donato Panzello, another witness for plaintiff, who has known the property for twenty-five years, lived at 844 Christian street, saw the saloonkeeper's wife go up and down the alley, and made common use of it. That the property ceased to be a saloon when the Brook's High License Law went into effect.

19. Emelio Conte testified that he accompanied the plaintiff's grantor, one D'Amico, about the time he purchased the corner property, which was in 1889, to the premises in question; went over the property in company with the then owner, one D'Ambrosio, who spoke of the chimneys and the hydrant, the latter being in the center of the yard, and of which the then owner in possession of the property, in selling to his grantee, said, " This will be used for all three, because this is three houses. You can have your part, and the other side to use it, too: " and, in speaking of the privy, he said : " You can have this for your own use ; " and, in answer to the question as to whether the then owner went up and down the alleyway, he replied, " You can have the right to pass through the gate."

20. The plaintiff, in testifying for himself, after describing

the property and his rights in connection with his deed, also testified to the interference of his rights by the defendant.

21. Michele Palmiro, a barber, who has known the property for eleven years, being a frequent visitor to it, going there at least once a week for the past eleven years, in speaking of the chimney, said : ." The pipe holes were located when the building was put up, because they could not take a chisel to form it."

22. The defendants called seven witnesses, three of whom were defendants in the case, but none of this testimony militates against the direct testimony of the plaintiff as to the uses of the alley, hydrant and chimney. All of the defendants' testimony is of a negative character ; the witnesses testifying simply that they knew nothing about these uses ; had not observed or seen them exercised. The testimony about the gate being erected at the end of the alley in no wise contradicted the plaintiff's testimony, nor does it militate against it in the slightest way. There is not a word of testimony to show that the plaintiff and his predecessors in title had not the right to use the alley, hydrant, chimneys and privy as testified to by Miss McPeak, and as confirmed by the other witnesses as to the actual use of the premises.

The defendants undertake to claim the right to destroy the brick privy well, and put up a smaller wooden or frame building upon a different site from that upon which the old brick one had stood for so many years, placing it nearer the plaintiff's kitchen door, and cut off his use of the yard after giving him modern improvements of a hopper and underground drainage whether he desires it or not ; the defendants claiming the right to impose the same as improvements upon plaintiff against his will ; they contending that they had a right to substitute the new for the old, and make the proposed change as a part of the rights conferred upon them under the law in construing the deeds and grants concerning the said privy and well.

There is no evidence on the part of the defendants that there was any necessity for any such change. They claimed the well to be full and foul, the brick building of the privy to be in a dilapidated and dangerous condition, but they presented no evidence to show that there was any necessity or requirement of any paramount authority to make the change, or that it was

dictated by anything more than their own notion that it should be made.

The court entered a decree: That the respondents, their employees, servants and agents be and they are hereby enjoined from in any manner interfering with or in any wise disturbing the complainant's quiet use and enjoyment of the chimney, alley and hydrant situate on the respondents' premises Nos. 844, 846 Christian street, as they were prior to the alterations complained of in the bill, and that the respondents be and they are hereby directed to forthwith restore the privy and privy well situate on said premises 844, 846 Christian street, to the same condition, appearance, location and use that they were in before the acts complained of in the bill.

*Error assigned* was the decree of the court.

*Roland R. Foulke,* for appellants.—A court of equity has no jurisdiction to determine a legal title which is in dispute: Mowday v. Moore, 133 Pa. 598; Rhea v. Forsyth, 37 Pa. 503; Coward v. Llewellyn, 209 Pa. 582.

The respondents had a right under the terms of the grant from Smith to make the alterations complained of: Atkins v. Bordman, 43 Mass. 457; Olcott v. Thompson, 59 N. H. 154.

If no legal right and no justification exist, still no mandatory injunction can issue, as the damage and inconvenience to the respondents by granting the injunction would be greater than the damage and inconvenience caused the complainant by with holding it: Sullivan v. Steel Co., 208 Pa. 540; Huckenstine's App., 70 Pa. 102.

*J. Hibbs Buckman,* of *Hopple & Buckman,* for appellee.—The claim of right by appellants to interfere with the appellee's easement and privy well by the entire destruction of that right and the substitution of anything new that the appellants proposed to force the appellee to accept, even under the cloak or cover of improvement, has been disposed of by the cases of Ellis v. Academy of Music, 120 Pa. 608; Bank v. Reighard, 204 Pa. 391; Mershon v. Fidelity Ins., etc., Company, 208 Pa. 292.

OPINION BY MR. JUSTICE MESTREZAT, March 6, 1905:
Under the testimony there can be little or no dispute as to

the facts in the case, which have been fully and correctly found by the learned trial judge; and his conclusions of law are amply sustained by the numerous authorities he cites. Little need be said in vindication of his decree.

We agree with the learned counsel for appellants that a court of equity has no jurisdiction to restrain by injunction an interference with a legal right which is in doubt and rests upon disputed questions of fact. Before a party can invoke the aid of a chancellor in such cases, he must have his right determined in an action at law. But it is equally well settled in this jurisdiction, that a court of equity will restrain a threatened interference with the exercise of a right without a prior adjudication at law where the right is clear and there is no serious dispute as to any of the material facts. Both of these propositions are so well settled that no authorities need be cited to sustain them. Here, the right of the plaintiff to the use of the outhouse as originally located, the alley, the hydrant and the chimney, as averred in his bill, was so conclusively established by the testimony that there could be no serious dispute concerning it. The answer, it is true, denied some of the material averments of the bill, but the testimony disclosed no facts to sustain such denial, and hence was not sufficient to oust the jurisdiction of the chancellor. " It is not enough for the defendant to deny the plaintiff's right," says the court in Miller v. Lynch, 149 Pa. 460, " his denial must be based upon facts which show a substantial dispute. The facts found by the master show that the plaintiff's right to the use of this alley in the manner claimed by him was entirely clear. It would have been useless to send the case to a jury to settle a question of fact which is not of a tangible nature."

The appellants further contend that they had the right to make such alterations in the structure, form and location of the outbuilding as might be necessary for the improvement of their estate and the abatement of a nuisance, so long as they did not materially interfere with the uses of the building by appellee. The rule in such cases is stated in 10 Am. & Eng. Ency. of Law (2d ed.), 428, as follows: " In the case of an easement by express grant, the rights and liabilities of the parties are determined by the terms of the agreement, and each has a right to insist that the terms of the agreement be com-

plied with, and that, so long as the easement is enjoyed, it shall remain substantially as it was at the time the right accrued, regardless of whether benefit or damage will result from a proposed change." Here, again, are the appellants confronted with the facts and they render it unnecessary to determine the question their counsel suggests. The trial judge finds that there was no necessity for a change in the structure or location of the outbuilding and "that it was not dictated by anything more than their own notion that it should be made." But it also clearly appears from appellants' own admissions that the proposed alteration of the house would have been most material both as to the structure and its location. The old building was a brick structure and its door was about nine feet east, and three feet south, of the door of the appellee's kitchen, whereas the new building was wooden or frame and its door was within three or four feet of the kitchen door. The appellee had the right to have the outbuilding located at the distance of the original building from his house with the right of passage over the intervening space, and the erection of the new building within a step of his kitchen door would be a substantial, as well as a most material and undesirable, alteration or change in his easement. As suggested by the trial judge, " if the defendants wanted to improve their property by the erection of brick closets, they should at least have put them near the site or location of the old, and not bring any one of them nearer to the plaintiff's house or kitchen door." It is also suggested by the appellants that the change in the old building was justified because of the order of the board of health, but, as found by the trial judge and not excepted to, "they presented no evidence to show that there was any necessity or requirement of any paramount authority to make the change."

It is further argued by the appellants that the trial court should not have decreed the restoration of the outbuilding because " the damage and inconvenience to the respondents by granting the injunction would be greater than the damage and inconvenience caused to the complainant by withholding it." It is sufficient to say in reply to this suggestion that the facts as found by the trial court do not warrant this allegation by the appellants. On the other hand, damages recoverable by law for the invasion of the appellee's rights would be clearly inade-

quate and his injury permanent and irreparable, and hence the court should give him adequate relief by requiring the appellants to restore the property to the condition in which it was when they destroyed it.

The assignments of error are overruled and the decree is affirmed.