Valley Smokeless Coal Co., Appellant, *v.* Manufacturers' Water Co.

Argued October 4, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Percy Allen Rose,* with him *Edwin A. Lucas* and *Dickson, Beitler & McCouch,* for appellant.—The support to the right of way granted appellee is limited to the 25 foot strip.

Defendant's use of right of way granted violates the express conditions not to impair plaintiff's operations and should be enjoined: Unangst's App., 55 Pa. 128; Rockafellow v. Coal Co., 12 Pa. C. C. R. 241.

Defendant's rights in plaintiff's lands arise solely by contract and where defendant, in dealing with plaintiff's property, exceeds its powers it should be enjoined: Com.

v. R. R., 24 Pa. 159; P. R. R. Co.'s App., 115 Pa. 514; Clark v. Martin, 49 Pa. 289; Hacke's App., 101 Pa. 245; Earley's App., 121 Pa. 496; Bitting's App., 105 Pa. 517.

Defendant, in the conduct of an artificial use on plaintiff's property, should be enjoined where such use indirectly, but as effectively as though it were direct, interferes with plaintiff's full enjoyment of its remaining property: Hauck v. Pipe Line Co., 153 Pa. 366; Rogers v. Traction Co., 182 Pa. 473; Welliver v. Electric L., H. & P. Co., 38 Pa. Superior Ct. 26; Robb v. Carnegie, 145 Pa. 324; Stokes v. R. R., 214 Pa. 415.

Parties to easement entitled to enforcement of its terms regardless of benefit or damage: Piro v. Shipley, 211 Pa. 36.

*John J. Heard,* with him *J. C. Davies, Arthur B. Van Buskirk* and *Reed, Smith, Shaw & McClay,* for appellee. —Under the agreement of 1907 the water company is entitled to such vertical and lateral support as the enjoyment of the grant requires: Carlin & Co. v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485; Woods v. Coal Co., 230 Pa. 197; Noonan v. Pardee, 200 Pa. 474.

There is a well recognized corollary of the support doctrine to the effect that while the right to support may be waived, such waiver must expressly appear by clear words and is not to be defeated by mere implication: Coleman v. Chadwick, 80 Pa. 81; Scranton v. Phillips, 94 Pa. 15, 22; Miles v. Coal Co., 214 Pa. 544, 548.

It is well settled law that every owner of land has a right to have the soil of his neighbor's land remain as a support for his land in its natural condition: McGettigan v. Potts, 149 Pa. 155; Matulys v. C. & I. Co., 201 Pa. 70.

There is ordinarily attached to a grant such powers and incidents as are reasonably necessary to the enjoyment of the grant: Hammond v. Hammond, 258 Pa. 51; Winnett v. Gas Co., 37 Pa. Superior Ct. 204.

Even if the water company was granted only such support as the underlying 25 feet furnished, appellant is not entitled to the relief prayed for: Condron v. R. R., 233 Pa. 197; Good v. Brick Co., 224 Pa. 496; P. R. R. v. Ry., 184 Pa. 227; Heilman v. Ry., 175 Pa. 188; Arnold v. Cornman, 50 Pa. 361; Satterthwait v. Gibbs, 288 Pa. 428.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:
The Valley Coal & Stone Company, a Pennsylvania corporation, whose name was subsequently changed to the Valley Smokeless Coal Company, entered into an agreement, on February 16, 1907, with the Manufacturers' Water Company, by which it granted not a fee but an easement with "the right and privilege to lay, maintain, operate, repair and remove a pipe line" over its coal land in Cambria County, within limits fixed by metes and bounds, subject to certain specified conditions. The entire line was 2,800 feet in length, of which three-fourths was placed within a tunnel, and this portion was subjected to greater vertical pressure as a result of the superincumbent earth, and therefore required greater protection. For this purpose it was agreed that "the coal company will leave in place and unmined a strip of coal twenty-five feet in width under the entire course defined above for the said pipe line where tunneled for the support of the pipe line." There was, however, retained by the coal company the right to mine "successfully and conveniently" all of the coal on its land, except the 25 foot block beneath the tunnel, specially reserved, and, even as to the retained section, it was permitted to make cross cuts, not more than 18 feet in width, and not less than 100 feet apart. This limitation was made necessary because the line therein would be subjected to increased strain.

"It [was] further agreed that the said water company and its successors [should] not in any manner hinder nor delay any operations and work being carried on at

any time by the said Valley Coal & Stone Company and that all places and parts weakened and removed [should] be replaced, maintained and kept equally good and substantial at their own proper cost and charges; and also ......that any damage resulting [from a failure to so do], as well as from breaking of pipe line, flooding of mines and otherwise causing damages, the said water company and its successors [should] be responsible for the replacing of same and the cost and loss required to maintain and make the same good." In case of failure to comply with these conditions all rights were to be forfeited.

In order that the grantee could fulfill its obligation and keep the land, occupied with the pipe line, sufficiently supported, it was also stipulated "that the said water company may have access to the mines of the said party of the first part at any time for the purpose of erecting or constructing such additional supports for said pipe line as it may deem necessary." The contract likewise set forth that the "spirit and intent of the agreement is the granting of the actual needs to the said water company and its successors to lay and maintain said water pipes without damage, loss and hindrance to the Valley Coal & Stone Company," and "nothing shall be construed to hinder or obstruct any present improvements, nor any proposed or future improvements desired on the part of the Valley Coal & Stone Company and its successors."

The agreement plainly discloses the intention to reserve to the grantor the right to mine the coal on the property owned by it, excepting, however, the strip occupied by the water company, and even there to have the right to undermine and cross cut, but this limitation of use extended only to where the interference was to be at points not less than 100 feet apart for three-fourths of the entire distance. Solid support for 25 feet, where the line was located within the artificial tunnel, was inserted because for such distance the pipe would require

greater vertical and lateral support. The same need would not be demanded for the remaining 700 feet, where the line was upon the surface. When the remaining land was mined, the other property of the grantor was to be furnished with the necessary protection so that no loss or damage could be inflicted on it, the water company to provide further guards if required.

It is the duty of the owner of minerals to furnish "surface" support to the one who has the right to the land above (Jones v. Wagner, 66 Pa. 429; Horner v. Watson, 79 Pa. 242; Lenox Coal Co. v. Duncan-Spangler Coal Co., 265 Pa. 572; Woods v. Pittsburgh Coal Co., 230 Pa. 197; Charnetski v. Miners Mills Coal Mining Co., 270 Pa. 459), unless this legal obligation has been waived by the one entitled thereto. Such surrender may be shown by the written agreement between the parties, or a verbal understanding established by proper proof: Stilley v. Pittsburgh-Buffalo Co., 234 Pa. 492; Kellert v. R. & P. C. & I. Co., 226 Pa. 27; Householder v. Quemahoning Coal Co., 272 Pa. 78. As was said in Scranton v. Phillips, 94 Pa. 1, 22, "Thus, in clear, express and distinct language, it was agreed, the owner of the mine, his heirs and assigns, should be exempt from the very liability now attempted to be fastened on him and his assigns. We see no reason why a person shall not be bound by his agreement to exempt another from liability for damages in working a coal mine, as well as from liability for damages resulting in the performance of any other kind of labor. No rule or policy of law forbids it. The undoubted intention of the parties to the contract was, that [the grantee] might mine and remove the coal without any obligation to support the surface or liability in case it fell."

Likewise, the surface owner of land is entitled to lateral support of his property, though there is no express reservation of this duty in the conveyance: Pettit v. J. & F. R. R. Co., 222 Pa. 490; McGettigan v. Potts, 149 Pa. 155; Matulys v. P. & R. C. & I. Co., 201 Pa. 70;

Durante v. Alba, 266 Pa. 444. "The rule that the owner is entitled to lateral support for his ground extends only to support for his ground in its natural state, and does not include such support for the protection of buildings, or other structures, placed upon it": Noonan v. Pardee, 200 Pa. 474, 488; Gordon v. Pettey, 291 Pa. 258; Home Brewing Co. v. Thomas Colliery Co., 274 Pa. 56. If a waiver of this common law right is insisted on, the one so asserting has the burden of proving it, but that this was the understanding may be implied from the grant of a release of all damages which may be occasioned by mining, or otherwise: Miles v. Penna. Coal Co., 214 Pa. 544; Mine Hill & S. H. R. R. Co. v. Lippincott, 86 Pa. 468; Hines v. Union Connellsville Coke Co., 271 Pa. 219; Gordon v. D., L. & W. R. R. Co. (No. 1), 253 Pa. 110; Williams v. Hay, 120 Pa. 485. Where a conveyance has been made, it is to be construed so as to give effect to all of its conditions, and if the intent is apparent to permit the mining beyond certain designated limits, without obligation to protect the right of way provided for, then additional support required must be furnished by the grantee: Heningkamp v. Valley Smokeless Coal Co., 274 Pa. 186. When the right to lateral support has been released or surrendered, the grantor is relieved from obligation to furnish it, unless such burden is thereafter voluntarily assumed: Hendler v. L. V. R. R. Co., 209 Pa. 256.

In the present case the land was not conveyed to the water company in fee, but there was a grant of an easement or right of way across it (Hendler v. L. V. R. R. Co., supra), and it could be occupied only under the conditions defined in the contract: Piro v. Shipley, 211 Pa. 36; N. & W. Branch Ry. Co. v. Swank, 105 Pa. 555. The grantee had the right to make use, for the purposes contemplated, of a strip of land upon which to build and operate its pipe line: Winnett v. Carnegie Nat. Gas Co., 37 Pa. Superior Ct. 204. It could not exceed the powers granted, or go beyond the lines fixed, without the con-

sent of the grantor: Hauck v. Tidewater Pipe Line Co., 153 Pa. 366. The latter had expressly reserved in the agreement before us the right to take out all of the coal on its land, except as it was limited in its operations on the 25 foot strip under the land tunneled, but, even as to this portion, it retained the restricted power to undermine. The water company agreed to permit the removal of the mineral generally, and to compensate the coal company for any loss which it might sustain by reason of interference with its operations, and it is this reserved privilege which the grantor now desires to exercise.

For a number of years after occupation of the right of way, development of the mine did not require a close approach to the strip on which the pipe was constructed, but later the ordinary workings of the coal company made this necessary. Negotiations between the parties concerned, as to the extent of the proposed mining, were entered into, and continued for several years, without reaching a definite plan of procedure, and were finally abandoned. This injunction was then asked to restrain the defendant from further maintaining and operating its pipe line on the right of way without properly supporting it, so as to remove the danger of breakage, and the consequent flooding of the property of the grantor, which it was averred would follow, in the absence of such action, if coal was taken out nearer to the 25 foot strip, as permitted by the agreement, and expressly stipulated for, since the water company had therein contracted not to hinder the coal company in its operations, and, in case any part of the land occupied by the pipe line was weakened, to correct the defect at its own cost, so that no damage would result, and for this purpose was given the power to enter and place additional supports. It was expressly agreed that all places which might become insecure should be replaced, maintained and kept equally good and substantial at its expense, so that no loss or damage should occur to the coal company by reason of its granting a right of way. The bill

averred the threatened injury, and an answer, in effect a demurrer, was filed, admitting, for present purposes, the facts set forth, and all inferences which may be reasonably drawn therefrom: Penna. Co. v. Sun Co., 290 Pa. 404; Pew v. Minor, 216 Pa. 343. The court below sustained, in part, the objections of the defendant to the sufficiency of the bill, and directed that an amendeu complaint be filed, and, in default thereof, a decree of dismissal followed, from which plaintiff has appealed.

The rights of the parties are fixed by express grant, their liabilities being determined by the terms of the agreement into which they entered. The easement is to be enjoyed and remain substantially as it was at the time the right accrued, regardless of whether benefit or damage will result to one of the parties from a change: Piro v. Shipley, supra. The fact that the water company will be inconvenienced by the assertion of the right of the coal company, and may be put to further expense in furnishing the additional support, as agreed upon, is no reason for refusing an injunction: Commercial Coal Mining Co. v. Big Bend Coal Mining Co., 293 Pa. 39. Where a right has been invaded, the question of comparative injury becomes unimportant: Quinn v. American Spring Co., 293 Pa. 152; Hacke's App., 101 Pa. 245; Mulville v. Cooper, 93 Pa. Superior Ct. 139.

In Unangst's App., 55 Pa. 128, 138, a case in which a right of way had been granted to a railroad company on condition that it construct its line sufficiently high upon the side of a hill so as not to interfere with the development of a proposed water power, and it violated or threatened to repudiate its promise, the court said, in part: "The only question remaining is, whether equity will interfere to prevent the injury. Of this I cannot doubt. After the construction of the road the plaintiff cannot build up his dam, for this would submerge the road five or six feet, and make it impassable. He would then have to put up with uncertain damages, and the risk of collection, as well as its difficulties and delays.

He is not bound to yield his undoubted right to previous compensation or good security, and it would be most inequitable to force him into this position. A corporation obtaining a concession to enter on condition of refraining from a particular injury, in its nature irreparable, and which cannot be readily estimated in damages, forfeits its license when it violates this condition, and should be restrained until it does equity. It comes under that head of equity power which extends to the prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals."

The appellee admits its right to lateral support is confined to the 25 feet, where solid coal was provided for the furnishing of protection to its line, in so far as the portion tunneled is concerned, but insists that as to the ¼ or 700 feet beyond there is no such restriction, since, as to this portion, it may require the retention of additional coal in place. The agreement does not expressly provide for the placing of additional supports by the water company, when necessary, on this part of the line, but, as we read the contract, its liability is not limited as contended for by appellee. The attendant circumstances indicate a reason for furnishing greater and more ample protection in the three-fourths first mentioned, where the pipe was underground, because of the pressure resulting from the overlying earth. As to the balance, covering the land where the pipe was on the surface, the parties must have contemplated that even a less width would be required to furnish ample support.

Even if the clause as to the furnishing of "additional supports," to be placed by the grantee, refers only to the tunneled portion, as was urged before us, there is still to be considered the stipulation found in another paragraph of the agreement that "all places and parts weakened" shall be replaced and maintained by the grantee, a provision clearly applying to the portion of line beyond the tunnel, and constructed on the surface for 700 feet.

There is no sufficient reason shown why the coal company should not exercise its retained privilege, as now proposed. If it does so, and no protection is provided, as contracted for, it is threatened with great injury, and to restrain this possibility has the right to ask for injunctive relief. The water company has expressly contracted that it would not hinder the coal company in operating its mines, and removing such coal as it saw fit, except under the tunneled portion, and, in case any part of the right of way became weakened, it would do what was necessary to prevent any loss or damage. Upon the performance of this condition, the grantor has the right to insist. The bill of complaint set forth a case for equitable intervention, and the answer, raising preliminary objections, should have been dismissed, and the defendant compelled to answer generally.

The decree of the court below is reversed with a procedendo; costs to be paid by the appellee.