## Kern, Appellant, *v.* Greensweig.

Argued December 14, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William H. Schneller,* for appellant.

*Carleton T. Woodring,* of *Walter, Woodring & Strausburg,* for appellee.

OPINION BY BALDRIGE, J., February 26, 1937:

The plaintiff filed a bill in equity, praying for an injunction to restrain the defendant from obstructing and interfering with a right of way. The chancellor, after a hearing, granted an injunction as prayed for, and ordered the defendant to remove his dwelling house built on part of the alleged right of way. The court in banc sustained exceptions filed to the chancellor's findings, dissolved the injunction, and dismissed the plaintiff's bill. The plaintiff appealed.

The road in dispute lies within the borough of Walnutport, Lehigh township, Northampton county, and runs the length of an island, approximately 1600 to 2000 feet long and varying in width from 100 to 500 feet, bounded on the east by the Lehigh Coal & Navigation Company canal and on the west by the Lehigh river. The northern terminus of the road is the state highway between Walnutport and Slatington.

Elias German was the owner of all this island except a narrow strip lying along the canal. In 1895 he conveyed a portion of it to Benjamin Best and granted a right of way, which appeared in the deed in the following language:

"The said party of the first part by these presents hereby granting the privilege to the said Benjamin Best and to his heirs and assigns, the free and unin-

terrupted use, liberty and privilege of, and passage in and along said roadway or passage way of twenty feet in width along the eastern line of the property or land of the said party of the first part, 'being along the line of the Lehigh Coal and Navigation Company's land,' from the above said described tract or piece of land northward to the Farm House [known] as the Island Park House and from said farm house northwardly as far as said Elias German's land extends the said Benjamin Best and his heirs and assigns are privileged to use the same roadway that is used as a driveway by said Elias German or his heirs or assigns, the said Benjamin Best shall have free ingress, egress, and regress to and for his own use or his heirs and assigns, his and their tenants and under-tenants, occupiers or possessors of the said described tract or piece of land at all times forever hereafter."

Three years thereafter German conveyed, by deed, to Best additional land, together with the same rights to this road as previously granted, except the width thereof was stated as 25 feet. In 1907, the heirs of Benjamin Best deeded to Ida A. J. Kern, the plaintiff, a portion of this land situate in the southern part of the island, together with the right to use the road aforesaid.

Greensweig, the defendant, acquired another portion of the original German tract, lying adjacent to and north of the plaintiff's land and extending from the river to within a little over 20 feet of the property of the Lehigh Coal & Navigation Company. The width thereof was not stated in the record or definitely proven, but from a rough drawing admitted in evidence upon the part of the defendant, as well as the photographs in the record, it appears to be approximately 40 to 50 feet.

The plaintiff claims that the proof she offered established that she is entitled to the use of a road 25 feet

in width, running practically straight from her property northward, through part of defendant's home, to the state highway, which, she contends, is the route used by owners of the island and the public for more than 40 years. She offered no evidence as to the nature and width of the road, but relied on the description in the deeds. It is to be noted that the deeds do not give the width of the road north of the farm house, but designate it as "the same roadway that is used as a driveway by said Elias German or his heirs or assigns."

The defendant maintained in the court below, as here, that the plaintiff is entitled only to a 25-foot roadway to the farm house; that from there to the public highway her grant is confined to a road used by German, his heirs or assigns; that on the site of his home there existed originally an ice house, which remained there from 1898 and prior thereto to 1918 or 1919, when a scale and office, which encroached 2 feet on the roadway as located by plaintiff, were erected on the same site; that in 1925, after the scale had been removed, the office was converted by him into a home. The defendant argues, therefore, that this roadway could not have traversed his property in the manner now alleged by plaintiff.

The chancellor's 21st finding of fact is: "The roadway crossing the Greensweig property passed at a point six feet east of the western wall of the scale house erected in 1918 and extended in width to the west twenty-five feet." If that fact is correct, the entire roadway, except the eastern 6 feet thereof, lies to the west of defendant's house. This is contrary to the proof of the location of the road. The plot of the island relied upon and offered in evidence by the plaintiff shows that the alleged road ran through the eastern portion of plaintiff's house and the remaining part lies toward the canal or east, not west, of the house.

The court in banc, in overruling the chancellor's findings of fact and conclusions of law, held that the proper construction of the deeds is, that the plaintiff is entitled to the uninterrupted use of a road 25 feet wide, running along the eastern line of the original German property and the western line of the Lehigh Coal and Navigation Company's land from the premises occupied by the plaintiff to the farm house and from there northwardly to a road used by German, his heirs or assigns; that this grant did not express any particular roadway; that from the evidence at the point where the defendant's property is located, a number of roadways were travelled, not only by plaintiff but by others who had occasion to travel the island; that the plaintiff has free access to and from her property and has no just cause of complaint.

The appellant's first legal position is that the evidence supported the chancellor's findings of fact and that they should not have been reversed by the court in banc, as they had the force and effect of a verdict of a jury, citing *Glenn v. Trees et al.,* 276 Pa. 165, 120 A. 109, and a number of other cases.

The rule is now clear that where the chancellor's findings of fact *are affirmed by the court in banc,* the appellate court is concluded thereby if they are supported by proof sufficient to require the disputed facts to be submitted to a jury in a trial at law; but they are not conclusive if overruled by the court in banc, as is plainly pointed out in *Belmont Lab. Inc. v. Heist et al.,* 300 Pa. 542, 151 A. 15. It is the duty of an appellate court, however, to examine carefully the reasons given by the court in banc for its action, to determine whether it was justified, keeping in mind the weight to which the original findings are entitled.

In view of the serious dispute of the location of this road, the lack of express provisions in the grant, and what appears to be the chancellor's erroneous findings,

we are of the opinion that the court in banc was justified in its action.

Moreover, there is the higher hurdle of laches for the appellant to clear before she reaches her goal of equitable relief. Going to and from her own home it is necessary to pass within a few feet of the defendant's house. She must have known in 1925, if not earlier, of the alleged encroachment, yet she gave no notice or made no protest of any kind for almost three years that defendant or any one else was transgressing on her rights. Such indifference amounted to an implied acquiescence. If the defendant was guilty of an unlawful intrusion, it was plaintiff's duty to speak instead of remaining silent and allowing him to expend a considerable sum of money to make himself a home. In failing to use due diligence, we think plaintiff was guilty of laches and is estopped from insisting upon equitable relief: *Smith v. Rowland,* 243 Pa. 306, 90 A. 183. In *Maier v. Walborn & High,* 84 Pa. Superior Ct. 522, we held that the plaintiff, who had delayed filing a bill in equity, objecting to the use of an alley by defendants, with full knowledge of its use, for from 2 to 3 years, until each of the defendants had expended a considerable sum of money in the erection of garages, was guilty of laches. In *Soifer et ux. v. Stein et ux.,* 101 Pa. Superior Ct. 135, the plaintiffs saw their adjoining lot owner complete a construction on what he regarded his lot. It was held that the plaintiffs, by delaying inquiry and suit for substantially 18 months, did not act with such diligence as warranted a mandatory order to restore the status quo.

We are aware of a line of cases holding that a court of equity will restrain interference with an easement where the right is clear and there is no serious dispute of any material facts, regardless of the inconvenience, benefit or damages: *Piro v. Shipley,* 211 Pa. 36, 60 A. 325; *Valley Smokeless C. Co. v. Mfrs.' Water*

*Co.,* 295 Pa. 40, 144 A. 740. Each case where equitable relief is asked must be decided, however, upon the facts and equities involved.

Furthermore the plaintiff has suffered no substantial injury as no hardship is imposed upon her. Any inconvenience she may experience is trivial. In using this road she is simply required to veer east for a very short distance around the end of defendant's fence to get to the alleged route of the old road. On the other hand, to compel defendant to tear down his home would entail a serious financial loss and inconvenience to him. In *Smith v. Rowland,* supra (243 Pa. 306, 312), the chancellor, in his conclusions of law, found: "In addition to these considerations there is the fact that an injunction restraining the use of the alley by defendant would do the defendant very great pecuniary harm, out of all proportion to any harm whatever that may be done to the plaintiff by the use of an alley for the theater. An injunction is not of right and the chancellor is not bound to make a decree which will do far more mischief and work greater injury than the loss he is asked to redress." "A suitor must not only appear in a court of equity with clean hands, but he must come with reasonable promptness, in good faith, and with a just and equitable demand ...... If an injunction is prayed for where upon a consideration of the whole case it ought not in good conscience to issue, a mere legal right in the plaintiff will not move the chancellor": *Powers' Appeal,* 125 Pa. 175, 186, 17 A. 254.

After giving careful consideration to the rights and the conduct of the parties, and due weight to the equities involved, we are of the opinion that the plaintiff is not entitled to the relief granted her by the chancellor.

The decree of the learned court below is affirmed, at appellant's costs.