456 A.2d 576

**Grant HUNSICKER, George W. Rhoads and Joan E. Rhoads, his wife, Richard A. Koch and Faye A. Koch, his wife, and Elwood J. Blocker and Mary Jane Blocker, his wife, Appellants,**

**v.**

**J. Gordon KATZ and Shirley G. Katz, his wife.**

Superior Court of Pennsylvania.

Argued June 2, 1982.

Filed Feb. 11, 1983.

214

Paul A. McGinley, Allentown, for appellants.

Cheryl Ann Klepper, Palmerton, for appellees.

Before HESTER, CIRILLO and JOHNSON, JJ.

HESTER, Judge:

This appeal arises from the issuing of a Decree Nisi entered on May 18, 1981, and a final Order, entered on November 4, 1981, by the Honorable Albert H. Heimbach, Court of Common Pleas of Carbon County, denying appellants request for a mandatory injunction which would compel the appellees to remove that portion of their garage which encroaches upon the right-of-way of Ochre Street, in the Borough of Lehighton, Carbon County.

A procedural and factual history of the case is as follows:

Appellants and appellees are owners of lots in what is presently known as Northern Acres Development in Lehighton Borough. The plan has been recorded. The development was originally laid out by Charles Weirbach for the Beckendorf Estate in 1903. Lots were sold according to the Beckendorf plan. On April 8, 1970, appellees purchased their lot in the plan and constructed a home with an attached garage fronting on North 6th Street and adjoining Ochre Street to the north and King Alley [1] to the west. The garage encroached onto Ochre Street, a distance of 8.15 feet. Ochre Street as laid out is 49.5 feet wide.

When appellees purchased their lot and constructed their home in 1970, that part of Ochre Street between 5th and 7th Streets and North 6th Street immediately north of Ochre may best be described as woodland, brush and wild shrubbery with no reasonable street boundary markings. At the time of the rendering of the Decree Nisi and accompanying

---

1. King Alley lies between North 6th and North 7th Streets.

Opinion by the lower court on May 18, 1981, Ochre Street west of North 6th Street was termed "impassible."

Appellants, as stated, are lot owners in this development. Mr. Hunsicker purchased his lot in 1968. The Kochs and Rhoads families purchased their property in 1967 and the Blockers purchased their lot in 1978. All of the appellants except the Blockers reside on Ochre Street between 4th and 5th Street. The Blockers reside on North 7th Street.

Appellants' reasons for seeking a mandatory injunction as stated to the lower court are twofold: 1) appellants have an interest in an orderly street system as planned by the Beckendorf Estate; and 2) the value of appellants' property will be decreased if the encroachment onto Ochre Street is permitted to continue.

█ It is well-established that appellants as lot owners in the development possess easement rights to the use and enjoyment of streets and alleys as public ways which are laid out on the plan. In *In Re: Pearl Street*, 111 Pa. 565, 571–72, 5 A. 430, 432 (1886), the Pennsylvania Supreme Court enunciated this principle in stating:

> The evidence was sufficient to prove a dedication of the street to public use. *Trutt v. Spotts*, 87 Pa.St. [339] 341; *Transue v. Sell*, 14 Wkly.Notes Cas. 397. To hold otherwise would enable the proprietor of a body of lands, which he sells in lots, to perpetrate a gross fraud. When he sells and conveys the lots according to a plan which shows them to be on streets, he must be held to have stamped upon them the character of public streets. Not only can the purchasers of lots abutting thereon assert this character, but all others in the general plan may assert the same.

█ Also, there is no qualification that the street need to be opened. As stated in *Vogel v. Haas*, 456 Pa. 585, 588, 322 A.2d 107, 109 (1974), quoting from *Brodt v. Brown*, 404 Pa. 391, 394–95, 172 A.2d 152, 154 (1961):

> "Where a lot of land is conveyed and the deed makes reference to a plan upon which the lot is laid out which, in

turn, calls for a certain street thereon, this constitutes a dedication of the use of the street to the enjoyment of the purchaser as a public way though not yet opened and the map or plan becomes a material and essential part of the conveyance and has the same effect as if incorporated therein. The right of the purchaser, in such instance, will be protected in equity: *Ferguson's Appeal,* 117 Pa. 426, 11 A. 885 (1888). See also *Holmes v. Longwill,* 89 Pa.Super. 1 (1926). Cf. *Powell v. Wian,* 456 Pa. 35, 318 A.2d 346 (1974)."

■ Moreover, it is established that lot owners, with easement reservations from a common grantor, possess the right to have obstacles which interfere with their right of passage removed from streets shown on a lot or plan:

"If he [the proprietor] lay the property out in lots, according to a plan disclosing such streets and alleys, and sells a lot, the law implies a grant or covenant on his part that all the streets and alleys on the plan shall remain open for the use of the public. The price paid for a lot is enhanced by the value of the easement in the streets and alleys appurtenant to the lot. The consideration is not only for the lot but for the easement as well. The proprietor of the plan therefore cannot revoke the implied easement and dedication; nor can the owner of any lot or lots having purchased with a knowledge of the plan in accordance with which the lots were sold, obstruct or deny to the public the right to use any of the streets or alleys shown on the plan. The easement over the streets is appurtenant to every lot and becomes a property interest in the purchase of the lot which may be protected by appropriate legal process." *O'Donnell v. Pittsburgh,* 234 Pa. 401, 410, 83 A. 314, 317 (1912); *Reed v. Reese,* 473 Pa. 321, 331, 374 A.2d 665, 669–70 (1976).

In deciding the matter before us, we are mindful of the pronouncement of Chief Justice Jones, in *Moyerman v. Glanzberg,* 391 Pa. 387, 393, 138 A.2d 681, 684–85 (1958):

"In *Kern v. Greensweig,* 125 Pa. Superior Ct. 430, 436, 190 A. 182, the Court stated: " 'An injunction is not a

right and the chancellor is not bound to make a decree which will do far more mischief and work greater injury than the loss he is asked to redress.' 'A suitor must not only appear in a court of equity with clean hands, but he must come with reasonable promptness, in good faith, and with a just and equitable demand.... If an injunction is prayed for where upon a consideration of the whole case it ought not in good conscience to issue, a mere legal right in the plaintiff will not move the chancellor': *Power's Appeal*, 125 Pa. 175, 186, 17 A. 254." See also: *Baugh v. Bergdoll*, 227 Pa. 420, 422, 76 A. 207. Upon that doctrine the lower court placed reliance, holding that the granting of an injunction in this case which would compel appellee to tear down a portion of a completely constructed dwelling would be creative of more harm to the appellee than of benefit to appellants. With that determination we are in agreement.

However, despite that doctrine, the Court below would have no choice but to grant the injunction if it had found that the appellee had deliberately and wilfully built upon the appellants' property or if it believed that he had intentionally taken a chance. This rule was well stated in *Ventresca v. Ventresca*, 182 Pa. Superior Ct. 248, 253, 126 A.2d 515, wherein it was said: "Where the defendant's act is tortious or in bad faith, or where he intentionally takes a chance, injunctive relief should be granted:" See also *Kanefsky v. Dratch Construction Co.*, 376 Pa. 188, 196, 101 A.2d 923; *Baugh v. Bergdoll*, supra; *Bright v. Allan*, 203 Pa. 394, 53 A. 251."

Appellants contend that the law applicable to the present case is that contained in *First Federal Savings and Loan Association of Lancaster v. Swift*, 457 Pa. 206, 213, 321 A.2d 895, 898 (1974), wherein our Supreme Court stated, "[C]ourts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised."

However, a further proposition of the law relating to easement encroachment litigation is that, "[A]n injunction is not a right and the chancellor is not bound to make a decree which will do far more mischief and work greater injury than the loss he is asked to redress." *Kern v. Greensweig,* 125 Pa.Super. at 436, 190 A. at 185. Also, regarding easement encroachments our Court has stated:

> "The lower court refused injunctive relief because it felt that it must balance the equities in each case and deny it if, in its opinion, to grant it would cause more harm than good. If there were any facts or circumstances in this case to excuse the wilful violation of the deed restriction by the defendants we would readily agree. We have searched the record and can find none.

> \* \* \* \* \* \*

> Where the defendant's act is tortious or in bad faith or where he intentionally takes a chance, injunctive relief should be granted." *Ventresca v. Ventresca,* 182 Pa.Super. 248, 253, 126 A.2d 515, 517–18 (1956).

Therefore, we must now examine the record to determine whether the chancellor's findings are supported by the evidence and the applicable law.

It is to be noted that throughout the hearing in this matter, appellees' 8.15 feet encroachment onto the unopened portion of Ochre Street was agreed by all parties to be an unintentional mistake. This can best be seen by the following discourse between the lower court and counsel:

> THE COURT: I think that we all can conclude at this moment that, from the testimony that's been given and from the assertion on the part of Counsel, there's no contention here—and I certainly couldn't find, under the evidence, that there was any intentional violation of the covenant in the deed on the part of Doctor Katz.—that what he did, he did innocently; not overlooking the fact that maybe he can't escape the responsibility for failing to have it surveyed, which is the argument of the plaintiffs.—and I am not passing on that at this point. Have I stated the position pretty correctly?

MR. McCREADY: (Appellants' Trial Counsel) I think so, Your Honor.

We, as the court below, find that the record does not sustain a finding that the encroachment onto the unopened portion of Ochre Street resulted from either a negligent or a chance taking act on the part of appellees. We find that in the construction of their dwelling they had no reason to know that a portion of the garage was encroaching onto Ochre Street. According to the undisputed testimony of Mr. Katz, at the time of purchase he was advised by his attorney and by the Developer that several surveys of the property had previously been made and that an additional survey was unnecessary. They pointed out to him the surveyor's pins marking the corners of the lots. In addition, according to Mr. Katz and corroborated by his witness, a Mrs. Barry, his neighbor to the south, showed him the same pins dividing their properties stating they were placed there by her surveyor in 1967. Mr. Katz further testified that it was impossible to tell from observation that the attached garage was encroaching onto Ochre Street since he found no other pins and the area to the east, to the north and west was a wooded area covered with trees and brush, with no identifying street boundary markings of any kind.

Unlike *Ventresca,* supra, wherein the plaintiff as soon as construction on a garage was started objected and advised the defendant that he was violating the deed restriction, and, *Peters v. Davis,* 426 Pa. 231, 231 A.2d 748 (1967), wherein the plaintiffs, through their counsel, notified the defendant prior to completion of the construction of the defendants' dwelling that the dwelling was in violation of the plaintiffs' easement rights, in the present case, appellees' encroachment was not discovered until a year following completion of appellees' garage, when the Borough's engineer, while surveying the intersection of North 6th and Ochre Streets, determined the encroachment. Also, it must be noted that not one of the appellants discovered the encroachment until Mr. Hunsicker learned of it upon becom-

ing a councilman for Lehighton Borough in 1978; eight years following construction of the garage.

As to the issue of whether granting the injunction would cause more harm than good, appellants do not seek to compel the removal of a part of appellees' garage as a result of any obstacle it presents to their use of Ochre Street beyond North 6th Street. Ochre Street at the time of the lower court hearings, had never been used for pedestrian nor vehicular travel and had been impassible due to the natural growth of trees, brush, and shrubbery as well as the condition of the terrain.

Also, unless the municipality at some future time opens Ochre Street beyond North 6th Street, it will remain in its impassible state and unused whether or not appellants receive a mandatory injunction. Appellants, in seeking the removal of the encroaching part of the garage, offered no testimony indicating any use they intend to make of Ochre Street or how they would be benefited by such removal. The width of Ochre Street subject to the easement, with the encroachment of the garage leaves a traversable width of 32.85 feet which is .15 feet less than the traversable width of Ochre Street, as opened by the Borough between 4th and 6th Streets. Moreover, no evidence was produced to demonstrate the effect such encroachment has on the value of appellants' property. In contrast, the evidence presented to the lower court demonstrated that the cost to appellees of demolishing their garage, repairing their house after demolition, and the loss of the fair market value of their house due to the demolition would be in excess of nine thousand ($9,000.00) dollars.

Therefore, we conclude, that appellees' encroachment was the result of an unintentional mistake and the granting of the requested injunction would cause more harm to the appellees than it would benefit appellants. The lower court correctly denied appellants request for a mandatory injunction.

Order affirmed.